## THE STATE OF KANSAS v. JOHN LEE.

CRIMINAL LAW—*Appeal by the State—When Lies.* The defendant pleaded "Not guilty" to a criminal charge, and the cause was submitted to the court without a jury upon an agreed statement of facts; and it was further agreed that the entire law of the case might be made a question reserved for the purpose of an appeal by the state. The court found the defendant not guilty, and entered a judgment of acquittal; after which the state attempted to appeal. *Held,* That the prosecution is finally ended, and that an appeal by the state will not lie.

*Appeal from Chautauqua District Court.*

THE opinion states the case.

*B. S. McGuire,* county attorney, for appellant:

Paragraph 6771 of the General Statutes of 1889 is very plain as to the driving of cattle into this state; no provision whatever being made for the driving of Texas cattle for any purpose within the line prescribed by law. It is admitted that the cattle in question were capable of communicating and imparting Texas or splenic fever, and that defendant knew it at the time; so we will not argue that point. And it is further agreed, that the cattle were driven into Chautauqua county and loaded at a time when such cattle were prohibited by the law from being driven into this state. And it will be observed from the agreed statement of facts that Elgin, Kas., was a point set apart for the shipping of this class of cattle; the state sanitary commission, upon investigation, finding that it was a point from which large numbers of southern

cattle were likely to be loaded for shipment, quarantined these yards preparatory for this class of cattle only. But if the sanitary commission can provide for the driving of cattle across the state line, they could in the same manner provide for the driving of Texas cattle across the entire state. In our judgment the law knows no difference between a few hundred yards of violation and a mile of violation.

It is claimed by counsel for defense in his argument, that the state law is antagonistic to the regulations and order of Secretary Rusk, and therefore unconstitutional, affecting the law of commerce. We think not. It is not a common thing for stock to be unloaded and fed for a period of from three to six months while in transit. If the power of congress to regulate commerce is to be construed as liberally in other and similar cases as in this one, we are inclined to the opinion that many laws now in force in different states could be declared invalid and held for naught.

It is stated that these cattle were originally loaded at a point in Texas and consigned to a party in Chicago. But we think that, inasmuch as they were unloaded in Kansas and driven out of the state, and then, after the lapse of several months, driven back, the place of original loading could not in any way affect the case.

*Geo. R. Peck, A. A. Hurd,* and *John W. Shartel,* for defendant in error:

1. If the court, in the light of the cases of *The State v. Carmichael,* 3 Kas. 102, *City of Olathe v. Adams,* 15 id. 391, and *The State v. Crosby,* 17 id. 396, and the terms of the assent of the defendant to the reservation by the state of the whole law of the case as a question for review, sees fit to entertain the case for decision upon its merits, the determination of one or more of the following questions is involved: *First,* Has the legislature of the state the power to enact legislation denouncing the act of the defendant as a crime, in the absence of any expression of congress on the subject? *Second,* The status of federal cognizance of the subject, and its effect on the policy of

the state, if the first proposition stated be answered in the affirmative.

Section 1, chapter 201, of the Laws of 1891, would seem unmistakably to define the acts of the defendant as a misdemeanor. This act, unlike many other laws controlling this subject, rests its exclusion of certain animals, not upon any malady existing in the animals proscribed, but upon capability of transmission of the infection. That it seemed to be the intention of the legislature to exclude railroad transportation of this class of animals through the state, is manifested by language in other sections of the same act, making railroad companies responsible for losses occurring by reason of hauling southern cattle. Hence it becomes at once pertinent to inquire whether this act is a police measure which the state has a right to adopt in any event, or whether it invades the exclusive domain of congress; and whether, if the state has the right, in the absence of federal legislation, to enact this law, do the contingencies set out in the case at bar support the adoption of such a law? The rule may be conceded, that in the exercise of the police power of the state, and in the absence of any action by congress, the state may assume to police interstate commerce, where the regulation is local in its character and the subject-matter is peculiar to the sovereignty assuming the power; and where the subject-matter of the proposed regulation is national in its character, the silence of congress with reference thereto negatives the power of the states to interfere.

Any interference with the untrammeled intercourse in the subject-matter involved herein is a regulation of commerce. This subject-matter is a commodity recognized by commercial usage, notwithstanding its danger to other property. This law is unlike restrictions or prohibitions laid upon traffic in substances intrinsically noxious, unrecognized as articles of commerce and inimical to public health and safety, or dangerous to private property. As to the latter, no question as to interference with commerce can arise, because the subject-matter of commerce is lacking. As to the former, the law is

difficult of application. Whether the case at bar falls within the exclusive power of congress to regulate commerce, or whether it occupies that sphere upon which the state may act until its action is superseded by the paramount federal authority, is not without difficulty, because the boundaries between the police power of the state and the exclusive right of congress to regulate interstate commerce are incapable of exact definition. The courts have long recognized this difficulty, and, for the most part, have contented themselves with the classification of each case as it arises. Aided, however, by general principles developed by a long course of decisions by the federal supreme court, it would seem that the case at bar does not present a state of affairs supporting state interference, and certainly not the exclusion of the subject-matter from the boundaries of the state. *Railroad Co. v. Husen*, 95 U. S. 465, 473.

The doctrine of this case has not been in the course of subsequent federal decision challenged, though enlarged upon in the case of *Kimmish v. Ball*, 129 U. S. 221. In the latter case, however, it was held that interstate commerce was in no sense involved in the determination. And while the court expressed the opinion that a statute of Iowa in question regarding Texas, Mexican and Indian cattle is valid, yet that statute did not presume to interfere with railroad transportation of these animals, but expressly excepted the same from its provisions. See, also, *Bowman v. C. & N. W. Rly. Co.*, 125 U. S. 465; *Welton v. State of Missouri*, 91 id. 275; *State Freight Tax*, 82 id. 232; *Gloucester Ferry Co. v. Pennsylvania*, 114 id. 204; *Gilman v. Philadelphia*, 70 id. 713; *County of Mobile v. Kimball*, 102 id. 272; *Liesy v. Hardin*, 135 id. 100; *Brown v. Houston*, 114 id. 631; *Henderson v. Mayor*, 92 id. 272; *Mugler v. Kansas*, 123 id. 623; *Wabash Rly. Co. v. Illinois*, 118 id. 557; *Fargo v. Michigan*, 121 id. 230; *Philadelphia Steamship Co. v. Pennsylvania*, 122 id. 326.

It is evident that there is a plentiful lack of harmony in all of the expressions seeking to define the boundaries between these different exclusive and overlapping powers.

From these cases it might confidently be asserted that if the subject pertains to transportation by means of railroads of a legitimate subject of commerce, state interference, either by prohibition, restriction, or regulation, is invalid, in the absence of the action of congress upon the subject. It may also be confidently asserted, that congress has manifested on the other hand its intention that interstate transportation of animals and merchandise by means of railroads shall be unrestricted by local authority. Conceding, however, that congress has expressed no such intention, and that the state may deal with the subject in a limited sense, the case at bar offers no support to any exercise of local authority which goes to the extent of attempting to exclude the cattle in question from the boundaries of a state. A solution of the question does not necessarily call for so fine a division of state and federal authority as might be necessary in determining the right of the state to exercise any authority over the subject whatever. For the purpose in hand, it would seem that a rule might be deduced which finds uniform support in all the cases. If the power is acknowledged to exist in the state to exclude, restrict or regulate the class of traffic in question, in the absence of congressional action, such power must recede before the exercise thereof by congress. If such power is exercised by the state, interstate commerce must not be unduly impeded thereby. The danger sought to be overcome must be great, and the injury inflicted upon interstate commerce must be the least that will reasonably control it. Exclusion must not be resorted to if restriction can be made to reasonably control the danger. A statute must be adjudged invalid which interdicts a certain class of traffic, the danger of which could be substantially controlled by regulation.

Current judicial and legislative authority in this country repudiate the English doctrine announced in the case of *Fletcher v. Rylands*, 3 H. L. 330, that he who brings upon his premises dangerous substances must control them at his peril; and yet that is the standard exacted by the very act of the legislature in question, with both civil and criminal redress for a

breach of its provisions. Transportation by rail implies the convenient and necessary use of all depot and station facilities, and includes stock yards within its meaning. *Covington Stock Yards Co. v. Keith,* 139 U. S. 128.

It is therefore respectfully submitted that the statute in question is void for want of power residing in the state legislature to pass such a law, as being an infringement upon the exclusive power of congress to regulate commerce among the states; and for the secondary reason, that if such power be admitted to exist in the state, its exercise under the facts of the case at bar goes beyond "what is absolutely necessary from the danger to be apprehended," and is to be treated as void for the purposes of this case.

2. If the power be conceded to exist in the state to adopt the legislation in question, it does so only by sufferance of congress, implied from its silence thereon. It is competent for congress at any time to assume its unused authority, and state regulations must give way to the paramount authority. See Tied., Lim. Police Power, § 202; Cooley, Const. Lim. 732. See, also, Miller, Const. 480; Lewis, Fed. Power over Commerce, 114; Ordroneaux's Const. Legislation, 469, 470, and cases cited.

It is respectfully submitted that the act of congress of May 29, 1884, to exclude the interstate transportation of live stock affected with contagious diseases, and confiding to the secretary of agriculture the authority to take such measures as he may deem expedient for the purpose of preventing the spread of contagious diseases among domestic animals, at least abrogates all state action inconsistent with this federal legislation and all demonstrative action in furtherance of its objects.

The act of the legislature of Kansas goes much farther in its exclusion than the act of congress. The act of the defendant falls within the former and without the latter. In the latter instance the cattle prohibited are diseased cattle ; in the former, cattle capable of conveying the infection. If the language of this act of congress be not sufficient to forbid the adoption of a more stringent standard of exclusion by

the states, the vesting of the residuum of the authority over the subject in an administrative department of the government and its full exercise constitutes such a complete engrossment of the subject as will preclude all state action upon all external features of the traffic, and confine the sphere of state control to its purely internal conditions. The federal legislation as supplemented by the executive power says to railroad companies, you may move these cattle in compliance with certain prescribed regulations which are shown to have been fully complied with, and the state law says to the same companies you may not do so. This declaration of the state must fail by reason of its conflict with the paramount authority. The defendant, having done no act not sanctioned by this authority, cannot be judged guilty of any offense.

We therefore submit that the judgment of acquittal must stand.

The opinion of the court was delivered by

JOHNSTON, J.: John Lee was prosecuted upon a charge of having driven certain southern cattle into the state which were capable of communicating Texas fever, during the month of November, 1891, in violation of the General Statutes of 1889. At the trial a jury was waived, and the cause submitted upon an agreed statement of facts, upon which the court found that the defendant was not guilty of the offense charged against him, and accordingly rendered a judgment of acquittal. The state attempts to appeal, and it was agreed that the entire law of the case might be made a question reserved for the purposes of an appeal for the state.

The defendant calls our attention to the precedents holding that the acquittal and discharge of the defendant terminates the prosecution, and that an appeal by the state cannot be entertained. It is settled that the finding of not guilty and the judgment of acquittal protects the defendant from any further trial and effectually terminates the prosecution. As the litigation on the merits is ended, and the defendant finally discharged, an appeal by the state does not lie, and hence it

will be dismissed. (*The State v. Carmichael*, 3 Kas. 102; *City of Olathe v. Adams*, 15 id. 391; *City of Oswego v. Belt*, 16 id. 480; *The State v. Crosby*, 17 id. 396; *The State v. Phillips*, 33 id. 100; *The State v. Moon*, 45 id. 145.)

All the Justices concurring.