Bonnewell v. Lowe.

L. K. BONNEWELL V. J. T. LOWE *et al.*

No. 16,178.

SYLLABUS BY THE COURT.

1. INJUNCTION—*Right to a Review—Change of the Status Quo.* Where the trial court refuses an injunction the right of review is not necessarily defeated by the full performance pending an appeal of the act sought to be enjoined. The court has jurisdiction to order the restoration of the original status, if the nature of the case is such that the order can be made effective.

2. DRAINAGE—*Location of a Ditch—Route Described in the Petition.* Under the provision of the drainage statute (Gen. Stat. 1901, § 2538) that upon the filing of a petition for a ditch, setting forth a substantial description of its proposed starting-point, route and termination, the township trustee shall upon certain conditions locate such ditch "as substantially conforms with the route described in the petition," it is not necessary that the termini and route of the ditch as constructed shall correspond exactly with the description in the petition. A considerable variation in this respect is not ground for declaring the proceedings void when collaterally attacked.

3. ——— *Finding that Establishment of Ditch is Necessary.* Under the statute (Gen. Stat. 1901, § 2538) providing that the township trustee shall locate a drainage-ditch under certain conditions if he finds it necessary, and that the clerk shall make a full and complete record of all the proceedings in connection therewith, an order for the establishment of such a ditch will not upon a collateral attack be held void because no formal finding of its necessity has been recorded.

4. ——— *Location of Ditch—Parties Benefited.* The requirement of the statute (Gen. Stat. 1901, § 2539) that for the purpose of apportioning the cost a drainage-ditch shall be divided into "sections not less in number than the number of owners of land through which the same may be located" does not imply that each owner is to construct so much of it as lies upon his own land.

5. ——— *Obstruction of Ditch—Repairs—Notice.* The statute (Gen. Stat. 1901, § 2539) providing that whenever such drainage-ditch is obstructed it shall be the duty of the township trustee, "after five days' notice having been given by any person damaged thereby," to cause it to be repaired does not

make the giving of such notice a prerequisite to action by the trustee; when he is satisfied of the need of repairs he may act. upon his own initiative.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed October 9, 1909. Affirmed.

*W. P. Hackney,* and *J. T. Lafferty,* for the plaintiff in error.

*L. H. Webb,* and *O. P. Fuller,* for the defendants in error.

The opinion of the court was delivered by

MASON, J.: By order of the township trustee two ditches theretofore constructed under the drainage statute (Gen. Stat..1901, §§ 2535-2550) were repaired, and the cost was apportioned among the landowners. benefited. One of these, L. K. Bonnewell, disputed the validity of the charge made against him, refused to pay it, and brought an action to prevent the amount being certified to the county clerk and placed upon the tax-roll. He was denied relief, and prosecutes error.

The defendants maintain that the proceeding should be dismissed because the acts sought to be enjoined have already been performed and therefore there is nothing against which the injunction prayed for can now operate, if allowed. They rely for support in this contention upon *City of Alma v. Loehr,* 42 Kan. 368, where it was said: "The function of a writ of injunction is to afford preventive relief; it is powerless to correct wrongs or injuries already committed." That case was obviously well decided, for the act performed, as in *Knight v. Hirbour,* 64 Kan. 563, was of such a character that the court could not compel its undoing, and an order directed to that end would necessarily have been fruitless. But the reason quoted was too broadly stated. In a proper case a mandatory injunction may

be issued. (*Railway Co. v. Billings,* 77 Kan. 119; 16 A. & E. Encycl. of L. 342, 343.)

"Where defendant has fully completed the act sought to be restrained, after the filing of the bill but before the issuance of any order or decree, the court has power to compel by mandatory injunction the restoration of the former condition of things." (22 Cyc. 742.)

Here the charge against the plaintiff has been entered upon the tax-roll, but no such change of conditions has taken place as to prevent the court by proper order from restoring the parties to their original status. A judgment in favor of the plaintiff, by declaring the tax illegal, would nullify the effect of its entry on the roll. In a case cited in support of the text just quoted it was said:

"Complainant had prayed for an injunction, which had not been secured, but after the court had acquired jurisdiction, if the collector enforced payment of the tax that fact would not constitute any defense to the bill, but the money was collected subject to the power of the court to compel the collector to refund it or submit to such other decree concerning it as might be equitable. A party filing a bill for an injunction may fail to procure a preliminary injunction, but any act after the court has acquired jurisdiction will be subject to the power of the court to compel a restoration of the status or to enforce such other relief as may be proper." (*New Haven Clock Co. v. Kochersperger,* 175 Ill. 383, 395.)

The validity of the assessment against the plaintiff is attacked upon the ground that the proceedings under which the ditches were originally constructed were void for these reasons, which will be considered in order: (1) The ditches were not located in conformity with the routes described in the petitions on which they were respectively based. (2) The record shows no finding that such ditches were necessary. (3) No part of either ditch is located upon the plaintiff's land.

The statute (Gen. Stat. 1901, § 2538) provides that upon a petition of owners of land adjacent to the line

of a proposed ditch being filed with the township clerk, "setting forth a substantial description of its proposed starting-point, route, and termination," and upon certain conditions being fulfilled, the trustee shall locate and establish such ditch "as substantially conforms with the route described in the petition." One of the petitions here involved (the one to which the first objection applies with the greater apparent force) asked that a ditch be dug "in the direction most feasible," along a route described thus: "From a point on the north line of said section 5, about 40 rods east of the northwest corner thereof, in a southwesterly direction, through said section 5 and 6 to the Arkansas river." The ditch actually constructed began on the west side of a road between sections 5 and 6, ran southwest for about half a mile, then turned to the southeast and ran a little over a mile to the river, passing through sections 6, 7 and 8, but not touching section 5. The ditch was also extended a quarter of a mile northwest from the bend. The plaintiff claims that this course did not "substantially conform" with the proposed route, and that the extension northwest from the angle was in reality a separate ditch, not supported by any petition whatever.

The departure from the route indicated in the petition was considerable, but we think not sufficient to devest the trustee of jurisdiction. A lateral ditch draining a part of the land embraced in the original plan was not necessarily an independent project requiring a separate petition. The statutory requirement of substantial conformity clearly implies that the ditch constructed need not follow absolutely the route indicated. Of a somewhat similar provision it was said, in *Kinne v. Bare*, 68 Mich. 625:

"It is not contemplated . . . that the petition for the drain should contain an accurate description of the termini and route of the proposed drain. It could not be well done without the petitioners first went to the expense of a survey, in order to determine the feasi-

bility of the route.    This the law does not require.
What it contemplates is that the termini and route shall
be approximately described for the information of the
drain commissioner; and it is left for him to ascertain
and determine the practical route and termini." (Page
627.)

And in *Donnelly v. Decker and others,* 58 Wis. 461:

"The objection that the ditch varied materially from
the line fixed in the petition is disposed of in *Neis v.
Franzen,* 18 Wis. 537 [a road case].    The supervisors
had the right to make any suitable variation from such
line, in their discretion, so that they did not so far de-
part from the line in the petition as to be materially an-
other and different line." (Page 476.)

(See, also, 14 Cyc. 1031, and cases there cited.)

The trustee is authorized to order the construction
of a ditch only in case he finds it to be necessary and
that it is demanded by or will be conducive to the pub-
lic health, convenience and welfare.    The clerk is re-
quired to make a full and complete record of the pro-
ceedings.    Here the record of the establishment of one
of the ditches fails to recite any finding with respect
to the necessity of the proposed improvement.    The
plaintiff invokes the rule thus stated in 14 Cyc. 1043:

"Many of the statutes provide that all of the find-
ings of the board of commissioners or trustees shall be
reduced to writing and entered of record by the clerk
of the board; and a drain is not legally established in
the absence of such written record showing the action
of the board, and also showing the existence of one of
the statutory grounds requisite for the establishment
of a drain."

This rule, however, does not apply to the present
case, for our statute does not in terms require a formal
declaration by the trustee that he finds the ditch to be
necessary, and in the absence of such requirement the
order for its construction sufficiently implies such a
finding.

"It is not generally requisite that the city ordinance
or resolution state that the improvement is necessary,

as such ordinance or resolution, having been enacted by the officers whose duty it is to determine the necessity, is in itself deemed a sufficient declaration of the fact; but if the statute expressly requires that the council shall declare its determination that the necessity exists, then such declaration of the grounds on which it proceeds must be made before it can order the improvements." (25 A. & E. Encycl. of L. 1212.)

Indeed, it has been held that as against a collateral attack the omission to record a determination that a proposed improvement is needed is not fatal even where the statute expressly requires a formal declaration to that effect. See *Newman v. City of Emporia,* 32 Kan. 456, where it was said:

"The plaintiff claims that the original resolution ordering the improvement to be made on Sixth avenue was informal, for the reason that the city council did not 'declare such work or improvement necessary to be done.' Now the statute in force at the time, section 75 of the second-class-city act (Comp. Laws 1879, ch. 19, par. 814), does require that the resolution passed by the city council should 'declare such work or improvement necessary to be done,' but we think that the city council in effect complied with the law. When it declared that the work should be done, and instructed the city clerk 'to advertise the same in accordance with the law governing such improvements,' it in effect declared that the improvement was necessary, and thereby invited opposition and protest, and gave as full opportunity for the same as though it had in express terms declared that the improvement was necessary. . . . It is possible that if a proceeding had been commenced before any work was done under this resolution the city council might have been enjoined from proceeding further until it passed a formal resolution declaring that the work was necessary. But no such proceeding was had, and we think it now comes too late." (Pages 460, 461.)

The plaintiff is not exempted from the cost of constructing and maintaining the drainage-ditches by the fact that they do not touch his land. Section 5 of the township drainage act (Gen. Stat. 1901, § 2539) reads:

"That the said township trustee, whenever he shall

have established any such ditch, drain, or watercourse, shall divide the same into suitable sections, not less in number than the number of owners of land through which the same may be located, and shall also prescribe the time within which the work upon such sections shall be completed, and by whom done. And the said trustee shall assess and allow all the fees, costs and expenses of locating and establishing such ditch, drain, or watercourse, and shall apportion the payment of the same equitably among the parties to be benefited thereby. . . . Whenever any such ditch, drain or watercourse shall become in any manner obstructed, it shall be the duty of said township trustee, after five days' notice having been given by any person damaged thereby, to cause such ditch, drain or watercourse to be repaired in such a manner as to remove such obstruction, and to restore such ditch, drain or watercourse to its established width and depth. . . . The cost and expense of such work and repairs shall be equitably apportioned among the parties benefited thereby, and said trustee may prescribe the time within which such assessments may be paid."

When an appeal is taken a jury is required to report (Gen. Stat. 1901, § 2543):

"First, whether it will be conducive to the public health, convenience or welfare to cause said proposed ditch, drain or watercourse to be established as located; second, the amount of compensation due to each person in case of the location of the same; and third, the amount of labor to be performed by such person interested in the opening and constructing of the same, . . . specifying the sections and work to be done as provided in section 5 of this act."

The provision that the number of sections into which the ditch is divided shall be *not less than* the number of owners of land through which it is located does not imply that each owner is to construct so much of it as lies upon his own land, but rather suggests that the tracts of land over which it passes may be fewer in number than the persons beneficially affected and therefore liable for the cost.

The plaintiff further objects that in the case of one

of the ditches the trustee made the order for repairs without any notice of an obstruction having been given by any person damaged thereby. We do not regard such notice as jurisdictional. We think the purpose of the statute in that regard is to enable one who is injured by an obstruction to require the trustee to take steps for its removal within a fixed time. Where the trustee is satisfied of the need of such steps he is authorized to proceed upon his own initiative.

Other objections are: That in cleaning the ditch the original line was not followed; that one of the orders for repairs did not show to what ditch it referred; that the place where the work assigned to the plaintiff was required to be done was not sufficiently indicated; and that the amount charged for the work was excessive. The claim of a departure from the first location of the ditch does not seem to have been conclusively established. The name used in the record—"the Taylor ditch"—was sufficient to show what ditch was intended; Taylor was the name of the first signer of the petition for one of the ditches, and the other ditch was described in the petition as terminating in "the Taylor ditch." Any obscurity in the designation of the portion of the work assigned to the plaintiff is unimportant in view of the fact that he resisted the proceedings on the other grounds specified. And the evidence seems to warrant a finding that the amount charged to the plaintiff was not unreasonable.

The judgment is affirmed.