No. 22,906.

THE STATE OF KANSAS, *Appellant*, v. ALBERT ALLEN, JOHN
ALLEN, and WILLIAM THOMPSON, *Appellees*.

SYLLABUS BY THE COURT.

1. CRIMINAL PROCEDURE—*Appeal by The State "Upon a Question Reserved by the State."* An appeal "upon a question reserved by the state" (Crim. Code, § 283) may be taken from an order overruling the objection of the state to evidence offered by the defendant on the trial of a criminal charge, and from instructions given by the court to the jury. The appeal may be taken after the jury has disagreed and after the cause has been continued to another term of court for trial.

2. SAME—*Homicide—Self-defense—Evidence of Violent, Turbulent Acts of Deceased May Be Admitted.* On a trial for murder, the defendant, after he has introduced evidence tending to prove that he .acted in self-defense, may, for the purpose of showing that he took the life of the other under a reasonable apprehension of danger to his own life, introduce evidence to show that he had heard of particular acts of violence on the part of the deceased, and that the deceased was a turbulent, quarrelsome, and dangerous man.

3. SAME—*Instruction—Right to Arm One's Self in Anticipation of an Altercation.* It is error to instruct a jury that a defendant, who has had a dispute with another concerning the ownership of property which each claimed and which is in the possession of the other, may arm himself and go to the home of the other to obtain the property, when the defendant has information that the other person is a violent man, and has made threats against the defendant, and when the defendant has reason to believe that a visit to the home of the other person will result in an altercation and in a possible encounter in which it may be necessary for him in self-defense to take the other person's life.

Appeal from Pawnee district court; ALBERT S. FOULKS, judge. Opinion filed July 10, 1920. Appeal sustained.

*Richard J. Hopkins*, attorney-general, *Clement L. Wilson*, county attorney of Greeley county, *Roscoe Peterson*, county attorney of Pawnee county, *Carr W. Taylor*, of Hutchinson, and *Edwin D. McKeever*, of Topeka, for the appellant.

*L. A. Madison*, of Dodge City, *E. R. Thorpe*, of Lakin, *Edgar Foster*, of Garden City, *Nellie Cline*, and *G. Polk Cline*, both of Larned, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The state presents a question reserved by it under section 283 of the code of criminal procedure. The defendants were placed on trial charged with the murder of Joe Kutler. A mistrial resulted, the jury failed to agree, and the action was continued for the term. The state complains of the introduction of evidence on behalf of the defendants, and of an instruction given to the jury.

1. At the outset this court is met with an application on the part of the defendants to dismiss the appeal. Section 283 of the code of criminal procedure reads:

"Appeals to the supreme court may be taken by the state in the following cases, and no other: *First*, upon a judgment for the defendant on quashing or setting aside an indictment or information; *second*, upon an order of the court arresting the judgment; *third*, upon a question reserved by the state." (Gen. Stat. 1915, § 8199.)

The appeal is taken under the third subdivision of section 283 on "a question reserved by the state." This expression has received attention in *Junction City v. Keeffe,* 40 Kan. 275, 19 Pac. 735, *The State v. Rook,* 61 Kan. 382, 59 Pac. 653, *The State v. Bland,* 91 Kan. 160, 136 Pac. 947, *The State v. Railway Co.,* 96 Kan. 609, 628, 152 Pac. 777. But the discussion there found does not materially assist in the solution of the problem now presented.

No order that this court may now make can have any effect on the trial out of which this appeal has arisen. No judgment has been rendered that can be affirmed, modified, or reversed. This court has repeatedly refused to consider questions where the matter complained of has been adjusted, or where any order made by the court would not have any effect.

"A court will not make an order which in the nature of things cannot be obeyed." (*Crouse v. Nixon,* 65 Kan. 843, 845, 70 Pac. 885.)

"The judgment of the court below having been complied with, nothing is left to litigate in this court." (*Waters v. Garvin,* 67 Kan. 855, 73 Pac. 902.)

"The rule applied that this court will not consider and decide questions when it appears that any judgment it might render would be unavailing." (*Jenal v. Felber,* 77 Kan. 771, 95 Pac. 403.)

"The court is not required to give judgments that are not effective. (*Stebbins v. Telegraph Co.,* 69 Kan. 845, 76 Pac. 1130.) When questions

become moot, judicial action will cease." (*The State, ex rel., v. Insurance Co.*, 88 Kan. 9, 10, 127 Pac. 76.)

(See, also, *City of Kansas City v. The State,* 66 Kan. 779, 780, 71 Pac. 1127; *Bonnewell v. Lowe,* 80 Kan. 769, 104 Pac. 853; *Duggan v. Emporia,* 84 Kan. 429, 114 Pac. 235; *City of Ottawa v. Barnes,* 87 Kan. 768, 125 Pac. 14.)

It has been repeatedly held that an appeal by the state cannot be prosecuted after the defendant has been tried and acquitted. (*The State of Kansas v. Carmichael,* 3 Kan. 102; *City of Oswego v. Belt,* 16 Kan. 480; *The State v. Crosby,* 17 Kan. 396; *The State v. Phillips,* 33 Kan. 100, 5 Pac. 436; *The State v. Moon,* 45 Kan. 145, 25 Pac. 614; *The State v. Lee,* 49 Kan. 570, 31 Pac. 147; *The State v. Hickerson,* 55 Kan. 133, 39 Pac. 1045; *City of Lyons v. Wellman,* 56 Kan. 285, 43 Pac. 267.)   Appeals have been acted on under the first and second subdivisions of the statute.   (*The State v. Brandon,* 7 Kan. 106; *Junction City v. Keeffe,* 40 Kan. 275, 19 Pac. 735; *The State v. Rook,* 61 Kan. 382, 59 Pac. 653; *The State v. Bowles,* 70 Kan. 821, 79 Pac. 726; *The State v. Campbell,* 70 Kan. 899, 79 Pac. 1133; *The State v. Campbell,* 70 Kan. 900, 79 Pac. 1133; *The State v. Buis,* 83 Kan. 273, 111 Pac 189; *The State v. Lumber Co.,* 83 Kan. 399, 111 Pac. 484; *The State v. Railway Co.,* 96 Kan. 609, 628, 152 Pac. 777.)   An appeal by the state has been sustained where judgment for costs has been assessed against the county, and the name of the prosecutor has been stated in the verdict, and the jury has found that the prosecution had been instituted without probable cause and from malicious motives (*The State v. Zimmerman,* 31 Kan. 85, 1 Pac. 257), and from a judgment in a liquor case refusing to award an attorney's fee as costs.   (*The State v. Bland,* 91 Kan. 160, 165, 136 Pac. 947.)   One reason given for refusing to entertain an appeal where the defendant has been acquitted has been that, having been acquitted, he was once in jeopardy and cannot be again placed on trial for the same offense.   (*The State v. Rook,* 61 Kan. 382, 59 Pac. 653.)

Section 3 of article 3 of the constitution of this state provides:

"The supreme court shall have original jurisdiction in proceedings in quo warranto, mandamus, and habeas corpus; and such appellate jurisdiction as may be provided by law."   (Gen. Stat. 1915, § 172.)

The statute under consideration provides for appeals "upon a question reserved by the state." The question presented is a question reserved by the state and comes within the language of the statute. Questions reserved by the state where there has been a verdict of not guilty would likewise come within the language of the statute, but such appeals have not been entertained, probably for three reasons; *first,* if a judgment of acquittal were reversed, and the defendant again placed on trial, he would be twice in jeopardy in violation of section 10 of the bill of rights of the constitution of this state; *second,* because the defendant had been discharged and the court no longer had any jurisdiction over him; *third,* because no order that the court could make would have any effect. The second and third reasons, when reduced to their final analysis, will be found to be based on the fact that any order to be effective would place the defendant twice in jeopardy. Bearing some analogy to the second reason, and showing in a degree that it is not good, is the practice that obtains in the Federal courts of certifying a question to a higher court for determination while the action is still pending in the court from which the question is certified. During the time that the question is pending in the higher court the trial court retains jurisdiction of the action and goes ahead with the trial after the question has been answered. A somewhat similar practice exists in a number of states. (3 C. J. 989-1000.) Even after a verdict of not guilty has been returned, the defendant has been discharged, and the judgment has been reversed, if it can be reversed, there is no reason why the court cannot again obtain jurisdiction of the defendant by causing him to be rearrested, but there is no reason for rearresting him if he cannot be tried. Jeopardy is the fact that prevents further proceedings, but jeopardy does not deprive this court of the power to hear and determine the present appeal, for the reason that the defendant is yet to be tried on the charge against him, and on that trial a plea of former jeopardy cannot be successfully interposed.

The civil code provides that the court may, in advance of the trial of the facts, pass upon questions of law "not raised by motion or demurrer but appearing to be involved in the case under the allegations of the pleadings," such questions

The State v. Allen.

and rulings to be stated in writing and filed as a part of the record. (Civ. Code, § 278, Gen. Stat. 1915, § 7178.) Under that provision a decision might be made the effect of which would be to declare that when that stage of the trial should be reached the jury should be instructed as to the legal effect of certain facts, if found. The statute does not at the present time allow an appeal from such a ruling or declaration, but no reason is apparent why it might not be permitted. The situation here presented is essentially similar. It has been developed by a ruling already made that the trial court entertains an erroneous view of the law on a vital point involved which, unless corrected, is likely to bring about an acquittal through the jury's mistaken conception of the defendant's rights. If this court may not interpose to prevent such a result, a grave miscarriage of justice may take place, because the remedy provided by the statute is unavailable, not on account of any practical evil consequences that might be apprehended, but by reason of a somewhat extreme application of an abstract theory. There is a real need for the practice here invoked, in order that the interests of the state may be protected, for a verdict of not guilty is necessarily final. A defendant requires no such protection, because if convicted he may obtain a new trial upon a showing that error was committed against him.

In *State v. Roderick*, 77 Ohio St. 301, the supreme court of Ohio sustained exceptions taken by the state in a murder trial. The constitution of Ohio then provided that the supreme court should have "such appellate jurisdiction as may be provided by law" and that no person shall "be twice put in jeopardy for the same offense." The statutes provided for bills of exceptions being prepared by the prosecuting attorney or attorney-general and being signed by the trial court and presented to the supreme court, and further provided that the judgment in the action in which the bill of exceptions was taken should not be reversed nor affected by the decision of the supreme court, but the decision should determine the law to govern in a similar case.

The application to dismiss the appeal is denied.

2. The defendants introduced evidence which tended to show that they had acted in self-defense, and which tended to

show that Joe Kutler had made threats of violence against them. Albert P. Allen, one of the defendants, testified as follows:

"Q. Mr. Allen, what had you heard about his being a quarrelsome and vicious man? A. I have heard that he beat Mr. Horning up and gouged his eyes nearly out. I have heard that he tried to kill his wife and some of his children and I have also heard that summer that I was up there that he had broken her arm and knocked the youngest boy, Buford, down with the bridle bit and I have also heard that he killed a man and his wife and child for a mule team, wagon and harness.

"Q. When did you learn of these, before or after you went over there that morning? A. Before.

"Q. Did you hear of any other acts that you have not detailed? A. Yes, sir.

"Q. What? A. Well, I have heard that he chewed several other fellows up.

"Q. Well, if you have any other things that you heard just tell them to the jury, Mr. Allen. A. I don't believe there is any more that I remember of now.

"Q. That is all the acts that you remember of that you heard? A. Yes, sir.

"Q. I will ask you if you heard these generally discussed in the neighborhood and vicinity? A. Well, I hardly ever went any place where Mr. Kutler was spoken of but what some one could tell me something of that kind he had done. That he was into trouble always."

That evidence was objected to by the state, and the objection was overruled by the court. Of that, the state complains.

Under a charge of murder where self-defense is pleaded and evidence has been introduced sufficient to raise a doubt concerning the defendant's having acted in self-defense, evidence may be introduced to show the general character of the deceased for ferocity and brutality. (*Wise v. The State,* 2 Kan. 419; *The State v. Riddle,* 20 Kan. 711; *The State v. Scott,* 24 Kan. 68; *The State v. Keefe,* 54 Kan. 197, 38 Pac. 302; *The State v. Spangler,* 64 Kan. 661, 68 Pac. 39.) But that does not answer the complaint of the state. Its complaint is that the defendant should not have been permitted to prove particular instances of violence or viciousness on the part of the deceased toward other persons, which did not concern the defendant, at which he was not present, and of which he had no personal knowledge. On this question the defendant cites *The State v. Burton,* 63 Kan. 602, 66 Pac. 633; and the state

cites *The State v. Long,* 103 Kan. 302, 307, 175 Pac. 145. In *The State v. Burton,* this court used the following language:

"Information conveyed before the killing to a party on trial for murder, who justifies on the ground of self-defense, that the deceased was a violent and turbulent man and accustomed to go about armed, is admissible, whether the informant gained his knowledge from general reputation of the deceased or from personal observation of his specific acts. The rule that bad character in the respect mentioned can be established only by general reputation of the deceased in the community has no application to the admission of such testimony. It is competent for the purpose of determining the state of mind of the accused at the time of the homicide, and whether he was induced to believe, in good faith, that he was in imminent danger of death or great bodily harm at the hands of the person killed." (Syl. ¶ 3.)

In *The State v. Long* (supra) this language is found:

"The defendant complains that he was not permitted to show specific acts of personal violence on the part of Lockridge, nor to show that knowledge of these acts had been previously communicated to the defendant. Evidence was introduced on rebuttal which tended to show that Lockridge was a quarrelsome, turbulent, and dangerous man. This was done by showing his general reputation.

" 'Where character evidence is offered in support of the contention that the deceased was the aggressor or to characterize and explain his acts, the defense is restricted to proof of general reputation in the community where the deceased lived, and may not show particular acts or conduct at specified times. It may not be shown that the deceased had engaged in frequent fights in which he used deadly weapons, and therewith made deadly assaults on his antagonists.' (13 R. C. L. 919.) (See, also, 6 Ency. of Ev. 780; 1 Wigmore on Evidence, §§ 63, 246.)

"The defendant was not permitted to answer the following question:

" 'I will ask if you had heard conversations, by persons round in that community, with reference to his being a turbulent, and quarrelsome and dangerous man?'

"The question was a proper one, and should have been answered. (*The State v. Burton,* 63 Kan. 602, 66 Pac. 633; Note, L. R. A. 1916 A, 1245.)" (p. 307.)

These decisions determine that the evidence complained of was admissible for the purpose of showing the state of mind of the defendants at the time of the homicide.

3. The state complains of the following instruction given by the trial court:

"You are instructed that if you find from the evidence that the deceased had made threats against the defendant, which, if carried into execution, would endanger his life or subject him to great bodily harm, and that defendant in good faith feared, or had reason to fear, that such

threats were liable to be carried into execution; or, if you find from the evidence, that deceased was a quarrelsome, dangerous man and defendant had knowledge of such fact and in good faith feared that an attack might be made upon him by deceased should he assert a claim of ownership to the mule in the possession of deceased, then the defendant might lawfully arm himself with a deadly weapon either in anticipation of such threats being carried into execution; or, on account of the dangerous character of the deceased he was liable, for the reasons stated, to be forced to repel a deadly and dangerous assault at the hands of the deceased, which had not been intentionally provoked or brought on by the defendant."

The record discloses that the difficulty between the deceased and the defendants arose over the disputed ownership of a mule that was in the possession of the deceased; that on May 18, 1918, the sheriff of Greeley county, the county in which the homicide occurred, defendant Albert Allen, and Joe Kutler, together examined the mule, and that Allen and Kutler each claimed it. The record further discloses that on the day Joe Kutler was killed, May 25, 1918, the defendants armed themselves and went to the home of Joe Kutler to talk with him and try to get the mule without any trouble. The fault with the instruction is, that according to it the defendants had a right to arm themselves and go to Kutler's home to get the mule, when the evidence tended to prove that they had reason to believe that an interview with Kutler would bring on an altercation and a possible necessity for killing him in self-defense. The Allens had a right to obtain possession of the mule, if it was theirs, if they could do so without committing a trespass or a breach of the peace. In 3 Blackstone's Commentaries, page 4, this rule is stated as follows:

"Recaption or reprisal is another species of remedy by the mere act of the party injured. This happens, when any one hath deprived another of his property in goods or chattels personal, or wrongfully detains one's wife, child, or servant: In which case the owner of the goods, and the husband, parent, or master, may lawfully claim and retake them, wherever he happens to find them; so it be not in a riotous manner, or attended with a breach of the peace. The reason for this is obvious; since, it may frequently happen that the owner may have this only opportunity of doing himself justice; his goods may be afterwards conveyed away or destroyed; and his wife, children, or servants, concealed or carried out of his reach; if he had no speedier remedy than the ordinary process of law. If therefore he can so contrive it as to gain possession of his property again, without force or terror, the law favors and will justify his proceeding. But, as the public peace is a superior consideration to any

The State v. Allen.

one man's private property; and as, if individuals were once allowed to use private force as a remedy for private injuries, all social justice must cease, the strong would give law to the weak, and every man would revert to a state of nature; for these reasons it is provided, that this natural right of recaption shall never be exerted, where such exertion must occasion strife and bodily contention, or endanger the peace of society. If, for instance, my horse is taken away, and I find him in a common, a fair, or a public inn, I may lawfully seize him to my own use; but I can not justify breaking open a private stable, or entering on the grounds of a third person, to take him, except he be feloniously stolen; but must have recourse to an action at law."

The evidence of the defendants tended to show that Kutler was a violent man; that he had made threats against the defendants; that they had information concerning those threats; that they armed themselves; that they went to Kutler's home; that they got into an altercation with him; that an encounter ensued which resulted in Kutler's death; and that they had reason to believe that their visit to Kutler's home would result in an altercation and a possible encounter in which it might be necessary for them, in self-defense, to take Kutler's life. They had no right to go to Kutler's home in that manner under those circumstances. (Clark's Criminal Law, 168; *Wallace v. United States,* 162 U. S. 466, 472; *Reed v. The State,* 11 Tex. App. 509.) In the opinion of the court the instruction was erroneous.

The appeal is sustained.

BURCH, J. dissents.

PORTER, J. (dissenting) : The decision is made to rest upon the provision of the constitution that the supreme court shall have, in addition to the original jurisdiction conferred upon it, "such appellate jurisdiction as may be provided by law," and the literal words of the statute which says that the state may appeal "upon a question reserved." The decision ignores the meaning of appellate jurisdiction as used in the constitutional provision.

In an early case, *Auditor of State v. A. T. & S. F. Railroad Co.,* 6 Kan. 500, this court had under consideration what the words "appellate jurisdiction," as used in the constitution, mean. In the opinion it was said:

"In this search we are not left entirely to our own reason for guidance. The constitution of the United States contains a clause of similar im-

port, which has been the subject of comment and decision by the supreme court of the United States, and the substance of their decision is thus stated by Judge Story in his Commentaries on the Constitution, § 1761: 'The essential criterion of appellate jurisdiction is that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. · In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted and acted upon by some other *court*, whose judgment or proceedings are to be revised. The appellate jurisdiction may be exercised in a variety of forms, and, indeed, in any form which the legislature may choose to prescribe; but still, the substance must exist before the form can be applied to it.' . . . This construction of the term represents as well the general views of men as the decisions of courts, and must have been in the minds of those who made it a part of our fundamental law, and must be held by this court as authoritative and binding. See the case of *Crane v. Giles*, 3 Kan. 54; Ex parte Logan Branch Bank, 1 Ohio St. 432." (p. 505, 506.)

In the recent edition of Bouvier's Law Dictionary, Rawle's 3d Rev., Vol 1, p. 208 (Appeal and Error), it is said:

"The appellate jurisdiction 'is exercised by revising the action of the inferior court, and remanding the cause for the rendition and execution of the proper judgment;' *Dodds v. Duncan*, 12 Lea (Tenn.) 731, 734. It 'implies a resort from an inferior tribunal of justice to a superior, for the purpose of revising the judgments' of the former; *Smith v. Carr*, Hard. (Ky.) 305; and it was said in *Marbury v. Madison*, that its essential criterion is 'that it revises and corrects the proceedings in a cause already instituted, and does not create that cause'; 1 Cra. (U. S.) 137, 175, 2 L. Ed. 60. *Auditor of State v. R. Co.*, 6 Kan. 500, 505, 7 Am. Rep. 575; Sto. Const. Sec. 1761; *Tierney v. Dodge*, 9 Minn. 166 (Gil. 153)."

In the case of *State v. Roderick*, 77 Ohio St. 301, cited in the majority opinion, the question of what is appellate jurisdiction is not referred to. The point was not raised nor considered. Exceptions of the state to certain rulings were sustained. What the status of the case was at the time the exceptions were considered does not appear from the opinion.

I find no analogy to be drawn from the federal procedure of certifying to a higher court questions for determination while a suit is pending below. The same thing occurs in civil cases under our practice where there is an appeal from a demurrer to a pleading, and the case remains in abeyance while the appeal is pending. Besides, it is held that a federal court has no authority to certify a case to the supreme court except upon questions or propositions concerning which it desires the in-

The State v. Allen.

struction of that court for its proper decision of the case. (*German Ins. Co. v. Hearne,* 118 Fed. 134, 55 C. C. A. 84.)   In an article on "Appeal and Error," in 3 C. J. 1001, it is said:

"And a proposition which is merely abstract or hypothetical will not be considered."   (Citing *Pelham v. Rose,* 9 Wall. [U. S.] 103; *Havemeyer v. Iowa County,* 3 Wall. [U. S.] 294; *Ward v. Chamberlain,* 2 Black [U. S.] 430; *Ogilvie v. Knox Ins. Co.,* 18 How. [U. S.] 577.)

It is further said:

"The supreme court will not decide a question certified where the decision will avail nothing."   (Citing *U. S. v. Buzzo,* 18 Wall. [U. S.] 125.) (Id. 1001.)

An attempted appeal which does not bring to the court a justiciable controversy, requiring the court to revise, affirm, modify or reverse some ruling made by the trial court, is not within the definition of appellate jurisdiction.

I think, too, there is an obvious fault in the reasoning and logic of the opinion.   It attempts to state three reasons why the court has heretofore uniformly declined to entertain such appeals.   These three reasons are stated to be: *first,* if a judgment of acquittal were reversed, and the defendant again placed on trial, he would be twice in jeopardy in violation of section 10 of the bill of rights; *second,* because the defendant had been discharged, and the court no longer had any jurisdiction over him, and *third,* because no order the court could make would have any effect.

The fact is, the court has uniformly declined to entertain appeals of this kind solely on the ground that no order the court could make would have any effect.   In one class of cases it could make no effective order, because the defendant, having been acquitted, could not be twice placed in jeopardy; in another class of cases, the defendant had been discharged and the court no longer had jurisdiction over him, and for that reason no order this court could make would be effective.   The reason has always remained the same.   The court declined to entertain the appeal because the court could make no effective order. The question presented was, therefore, regarded as moot.   It was moot because no order could be made that would affect the rights of any person or could be carried into effect.

The majority opinion, however, after classifying the reasons into three, makes this statement:

"The second and third reasons, when reduced to their final analysis, will be found to be based on the fact that any order to be effective would place the defendant twice in jeopardy." (*Ante*, p. 410.)

On the contrary, I insist that the first and second so-called reasons, when reduced to their final analysis, will be found to be based on the fact that no order the court could make would have any effect. The reason was well stated in general language in *Jenal v. Felber*, 77 Kan. 771, 95 Pac. 403 (cited in the majority opinion). The syllabus there reads:

"The rule applied that this court will not consider and decide questions when it appears that any judgment it might render would be unavailing."

In the majority opinion, after quoting the constitutional provision and the statute, it is said:

"The question presented is a question reserved by the state and comes within the language of the statute." (*Ante*, p. 410.)

It is true, the state has attempted to appeal on a question reserved, and I concede that the literal language of the statute authorizes such an appeal, but I deny the power of the legislature to confer upon the supreme court any jurisdiction whatever, save and except appellate jurisdiction under the constitutional provision.

No decision is rendered except to express an opinion that a certain instruction given in a case where there has been a mistrial was erroneous, and that certain evidence which the court admitted on the same trial was proper evidence. There is an opinion, but no judgment. No order is made, and the court merely decides purely academic questions. The opinion, therefore, is pure dictum. I admit that it contains a statement of good law, and that the instruction discussed in the opinion was bad. I am perfectly willing to concede that if the case is ever tried again and the same questions arise as to evidence and instructions, the trial court would doubtless follow the opinion, and that no harm in that case would result. My objection to the opinion is that it establishes a bad precedent—opens the door to a practice sure to result in appeals which merely require the supreme court to express its opinion upon abstract questions of law, which is not appellate jurisdiction, and which the legislature is powerless to confer upon the court. The appeal should be dismissed.