No. 25,652.

The Consolidated Flour Mills Company, *Appellant*, v. The Kansas Gas and Electric Company, *Appellee*.

SYLLABUS BY THE COURT.

Public Service Commissions—*Change of Rates—Jurisdictional Requirements.* The provisions of the public utilities commission act to the effect that if the commission finds an existing rate charged by a public utility to be unreasonable or otherwise unlawful, it may fix and order substituted therefor such rate as shall be just and reasonable, do not impose as a jurisdictional requirement to an order changing the rate that the order or other part of the record shall contain a recital that the board had found the existing rate to be unreasonable or for any reason unlawful. At least against a collateral attack upon the validity of the order, an inference that the commission found the existing rate to be unlawful may be drawn from the fact that it ordered a change.

Appeal from Reno district court; William G. Fairchild, judge. Opinion filed July 11, 1925. Affirmed.

*J. R. Beeching, Wm. H. Burnett, Charles Hall,* all of Hutchinson, *John S. Dean* and *Harry W. Colmery,* both of Topeka, for the appellant.

*A. C. Malloy, R. C. Davis* and *Warren H. White,* all of Hutchinson, for the appellee; *J. H. Agee,* of Abilene, *H. L. McCune, R. B. Caldwell* and *Blatchford Downing,* all of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

Mason, J.: On March 1, 1915, the Empire Milling Company entered into a contract with the Kansas Gas and Electric Company by which the latter agreed to furnish it electric current for the operation of its plant for five years at a specified rate applied to the monthly reading of the meter, payment to be made monthly. The Empire Milling Company in May, 1918, assigned its rights under the contract, with the consent of the other party, to the Consoli-

Electricity, 20 C. J. § 27.

dated Flour Mills Company. The contract was acted upon until June, 1918, when the electric company began charging a higher rate fixed by an order of the public utilities commission made March 25, 1918. The flour mills company claimed the order of the utilities commission was void and the extra charge wrongful, but made monthly payments of the increased price under protest for the remainder of the period covered by the contract, and on March 1, 1923, brought this action to recover the difference between the amounts paid and the contract price. Judgment was rendered against the plaintiff and it appeals.

The decision of the trial court was based upon the proposition that the claim sued upon was barred by the statute of limitations. The plaintiff regards the action as one for the breach of the written contract, which could be brought at any time within five years from the time it was by its terms to expire. The defendant regards it as one on an implied contract for the return of the excess payment claimed to have been wrongfully exacted each month, the period of limitation being three years from the time of payment, and the right to sue having expired more than a month before this action was brought. There is also involved the question whether the payments were not voluntarily made within the principle stated in *Milling Co. v. Gas and Electric Co.*, 115 Kan. 712, 225 Pac. 86, and for that reason not recoverable. The most important issue involved, however, is whether the order of the utilities commission raising the rate to be charged was void. A determination to the contrary will necessarily dispose of the entire case, as well as two others of the same general character which have been argued and submitted with it.

The objection made to the validity of the order establishing the increased rate is that it does not contain an express recital that the commission found the existing rate to be unjust, unreasonable, unfair, unjustly discriminatory or unduly preferential, or in any wise in violation of the laws of the state. The federal supreme court, reversing the circuit court of appeals of this circuit (*Public Utilities Commission v. Wichita R. and Light Co.*, 268 Fed. 37), in an action brought by another customer of the electric company to enjoin the enforcement of the same order, has held that this omission renders the order void on its face, the ruling being based, however, upon a construction of the statute attributing to it that intention, and not upon the theory of any provision of the federal constitution

Consolidated Flour Mills Co. v. Kansas Gas and Electric Co.

being violated if the contrary interpretation were adopted.  (*Wichita R. R. v. Pub. Util. Comm.*, 260 U. S. 48.)

The statute under which the utilities commission acted contains these provisions:

"It shall be the duty of the commission, either upon complaint or upon its own initiative, to investigate all rates, . . . charges . . . or schedules of rates, . . . and if after full hearing and investigation the commission shall find that such rates, . . . charges . . . or schedules of rates . . . . . are unjust, unreasonable, unjustly discriminatory or unduly preferential, the commission shall have power to fix and order substituted therefor such rate or rates, . . . charges . . . or schedules of rates . . . as shall be just and reasonable." (R. S. 66-110.)

"If upon such hearing and investigation the rates, . . . charges . . . or schedules of such common carrier or public utility governed by the provisions of this act, are found to be unjust, unreasonable, unfair, unjustly discriminatory or unduly preferential, or in any wise in violation of the provisions of this act, or of any of the laws of the state of Kansas, the public utilities commission shall have the power to fix and establish, and to order substituted therefor, such rates, . . . charges, . . . or schedules as it shall find, determine or decree to be just, reasonable and necessary." (R. S. 66-113.)

In the case referred to, the federal supreme court cites *Kaul v. Telephone Co.*, 95 Kan. 1, 147 Pac. 1130, as recognizing that "a contract for rates with a public utility cannot be abrogated except after a finding by the commission that they are unreasonable." The question involved, however, is not whether it is necessary for the utilities commission to find that an existing rate is too high or too low before it can change it, but whether in order to give validity to such an order there must be inserted therein an express recital that the commission has so found. In our judgment, a finding by the commission that an existing rate requires change for some of the statutory reasons may be, and in this case should be, presumed or inferred from the fact that a change is made, without an express declaration to that effect being incorporated in the order. During the fourteen years since the creation of the utilities commission, and the ten years additional in which the railroad commission act contained a somewhat similar provision (Laws 1901, ch. 286, § 18), that question has not been presented to this court. The practice, amounting to an operative interpretation of the statute, has been not to insert such explicit recitals in orders of the commission, and orders made without them have been repeatedly upheld. Merely by way of illustration, those passed upon in *City of Winfield v. Court of Indus-*

*trial Relations,* 111 Kan. 580, 207 Pac. 813, and *The State v. Railway Co.,* 76 Kan. 467, 92 Pac. 606, were of that character.

The rule is familiar that where a court of general jurisdiction has exercised its powers, the facts necessary to give it jurisdiction are presumed to exist although not recited in the record, while that presumption is not entertained in the case of a court of inferior or special jurisdiction. And in this respect ordinary administrative bodies are treated in the same manner as inferior courts. But where the jurisdictional fact is so related to the step to be taken that the action itself fairly implies a belief in its existence, there is no occasion or necessity for an express recital in the record that it is found to exist. Thus a public body which is authorized to order an improvement or establish a highway if it is deemed necessary, by implication declares it deems the necessity to exist by ordering such action to be taken, thus dispensing with the need for an express declaration to that effect. (28 Cyc. 1004; 37 Cyc. 237; 15 A. & E. Enc. of L. 384.)

There are decisions elsewhere to the contrary, but this court has long been committed to the view stated, as shown by this language:

"Indeed, it has been held that as against a collateral attack the omission to record a determination that a proposed improvement is needed is not fatal even where the statute expressly requires a formal declaration to that effect. See *Newman v. City of Emporia,* 32 Kan. 456, where it was said: 'The plaintiff claims that the original resolution ordering the improvement to be made on Sixth avenue was informal, for the reason that the city council did not "declare such work or improvement necessary to be done." Now the statute in force at the time, section 75 of the second-class-city act (Comp. Laws 1879, ch. 19, par. 814), does require that the resolution passed by the city council should "declare such work or improvement necessary to be done," but we think that the city council in effect complied with the law. When it declared that the work should be done, and instructed the city clerk "to advertise the same in accordance with the law governing such improvements," it in effect declared that the improvement was necessary, and thereby invited opposition and protest, and gave as full opportunity for the same as though it had in express terms declared that the improvement was necessary.'" (*Bonnewell v. Lowe,* 80 Kan. 769, 774, 104 Pac. 853.)

Where a utilities commission after a hearing changes an existing rate for a higher one, the implication that it had concluded the old rate was too low, for some of the reasons assigned by the statute, seems to us so clear as to do away entirely with the occasion for an express and formal declaration to that effect in the record.

Moreover, we regard the general scope of the act creating the

Consolidated Flour Mills Co. v. Kansas Gas and Electric Co.

utilities commission and a number of its specific provisions as authorizing and requiring a presumption in favor of its jurisdiction in such a situation as here presented. The statute as already shown in set terms makes it necessary for the commission to find that something is wrong with an existing rate before making a change, but does not say that the finding shall be incorporated in the order. The order itself is expressly required to be reduced to writing (R. S. 66-113), and the circumstance that no such express requirement is made with respect to the finding gives room for a distinction in that regard. The orders of the commission are made effective within thirty days of service unless action is commenced to set them aside (R. S. 66-113), and are *prima facie* reasonable (R. S. 66-115). And ready access is given to the courts for a review of the commission's decisions. (R. S. 66-118.) This court has held the effect of the statute to be to create a presumption that an order of the commission is valid as well as reasonable. (*Railroad Co. v. Utilities Commission,* 95 Kan. 604, 617, 148 Pac. 667; *The State, ex rel., v. Telephone Co.,* 115 Kan. 236, 223 Pac. 771.) It would seem that the tribunal is one which might well be accorded a more liberal presumption of regularity in procedure than is indulged in the case of an inferior court. Of such a body it has been said:

"Great power has been vested in the commerce commission by the public-utilities act, and it is clear that the legislature intended to create an office of dignity and great responsibility. There is no reason why the members of this commission should not develop and establish a system of rules and precedents as wise and beneficial within their sphere of action as those established by the early common-law judges. All doubts as to the propriety of means or methods used in the exercise of the powers clearly conferred upon them should be resolved in favor of their action in the interest of the administration of the law. There should be ascribed to their decisions the strength due to the judgment of a tribunal appointed by law and informed by experience." (*Commerce Com. v. C., C., C. & St. L. Ry. Co.,* 309 Ill. 165, 170.)

In *Corporation Com. v. Mfg. Co.,* 185 N. C. 17, the decision of the federal supreme court in the Wichita Railroad and Light Company case was invoked against an order of the state corporation commission changing a rate, and the court said:

"It is the accepted principle here that a verdict or finding of fact shall be interpreted according to the evidence and the law applicable, . . . and the significance of this finding that the specified rates as adopted as the reasonable maximum rate to be charged from and after 1 August, 1921, . . . construed in reference to the statutory provision, amounts to a finding that any lower rates, by contract or other, are unreasonable and unjust." (p. 33.)

The statutory provision there referred to reads: "That the rates or charges established by the commission shall be deemed just and reasonable, and any rate or charge made by any corporation, company, copartnership, or individual engaged in the business enumerated, ·. . . other than those so established, shall be deemed unjust and unreasonable." This language is more elaborate than that of our own act, but, as we see it, the difference forms no basis for a distinction as to the principle applied, in view of our established rule that orders of the utilities commission are presumed valid.

In a case holding that it was "clearly the duty of the commission under the statute, at least if requested by any of the interested parties, to set forth in its orders and decrees the facts on which its order is based," it was said:

"Neither can we say upon its findings that the commission disregarded any of the elements prescribed by the statute as the basis for determining what are reasonable rates. While their findings of fact do not show what the facts were on which their order was based, except the impurity of the water, we cannot assume that they disregarded plain requirements of the law." (*Hamilton v. Power Co.,* 121 Me. 422, 425.)

In another case this language was used:

"While it is true that the utilities act expressly requires the commission to make findings, and while it is also true that the commission should be careful to make proper findings respecting the material ultimate facts upon which an order is based, yet we cannot see wherein the plaintiffs or anyone else could have been, or can be, benefited if the findings had been far more specific. When the findings and the opinion filed by the commission are considered together, as in this case we think they should be, we are of the opinion that the objection that the findings are insufficient is not tenable." (*Salt Lake City et al. v. Utah Light & Traction Co.,* 52 Utah 210, 226.)

The Wichita Railroad and Light Company case cites *Utilities Com. v. R. & O. S. W. R. R. Co.,* 281 Ill. 405, and *Utilities Com. v. Springfield Gas Co.,* 291 Ill. 209. In the first of these cases an order of a utilities commission was set aside because it was based upon a complaint and finding that a rule of a railroad for distributing coal cars was invalid, and the federal supreme court had decided that while in the situation presented the commission had jurisdiction to supervise the administration of such a rule the interstate commerce commission had exclusive power to determine the validity of the rule itself. In the second case an order of the utilities commission fixing gas rates was remanded to it for further proceedings because it had excluded one essential element of value from its consideration and

had not indicated what part of the value of a million-foot gas holder it had taken into account in estimating the value of the plant. Each case involved a direct attack on the order of a commission, and in each the decision seems to us to be based upon matters of substantive law rather than of mere procedure.

Here the order of the commission is collaterally assailed as an absolute nullity. The attack was instituted almost five years after the order was made, though only a little over three months after the decision of the federal supreme court in the Wichita Railroad and Light Company case. The question being one of the interpretation of a local statute, we feel constrained to act upon our own judgment and hold the order valid. This holding makes it unnecessary to pass upon the other questions that have been argued.

The judgment is affirmed.