UNITED STATES v. CHICAGO & A. RY. CO. et al.

(District Court, N. D. Illinois, N. D. July 6, 1906.)

1. CARRIERS—INTERSTATE COMMERCE—PAYMENT OF REBATES.

The published tariff schedules of defendant, an interstate carrier by rail, gave its rate on packing-house products from Kansas City, Kan., including the rate charged by a belt line company for carriage between Kansas City, Kan., and Kansas City, Mo., to a connection with defendant's road. Defendant charged and received such rate from a packing company, paid the charge of the belt line company, and afterward paid back to the packing company the sum of $1 upon each car so shipped. *Held*, that such repayment constituted the granting of a rebate, in violation of Interstate Commerce Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], and could not be justified as lawful on the ground that it was an allowance to the packing company for the use of its own private track in moving the cars from its shipping building to a connection with the belt line tracks.

2. SAME.

The word "rate," as used in Interstate Commerce Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], means the net amount the carrier receives from the shipper and retains, and any device by which such amount is reduced below the rate given in the published schedule is one for the giving of a rebate.

On Motion by Defendant for Direction of a Verdict.

Charles B. Morrison, U. S. Dist. Atty.

John Barton Payne and Ralph M. Shaw, for defendants.

LANDIS, District Judge. In this proceeding the Chicago & Alton Railway Company and its vice president and general freight agent are charged with violating the interstate commerce law by granting rebates. The government having closed its case, the defendants move for an order directing the jury to return a verdict of not guilty.

The material facts are as follows: The Chicago & Alton Company is an interstate carrier, operating a railroad from Kansas City, Mo., to points east; the Belt Railway Company is an interstate carrier operating the belt line connecting Kansas City, Kan., and Kansas City, Mo.; the Schwarzschild & Sulzberger Company is a corporation engaged in the beef-packing business at Kansas City, Kan.; the track of the Alton Company connects with the Belt track at Kansas City, Mo.; and the Belt track connects with the private track of Schwarszchild & Sulzberger, laid and maintained by that corporation on its own property at Kansas City, Kan., occupied also by its packing plant. As required by the interstate commerce law the Alton Company and the Belt Company published and filed tariff schedules announcing to the shipping public what their charges would be for the transportation of packing-house products. The Belt tariff was $3 per car from the packing company's track to the Alton connection. The Alton schedule stated that its rate included the Belt Company's charge, so that, in substance, it was as if the Alton road itself connected with the packing company's track. The Alton Company collected from the

Schwarzschild & Sulzberger Company the amount of its freight charge as per the published schedules, remitted to the Belt its $3 switching charge, and thereafter paid to Schwarzschild & Sulzberger $1 on each car of the Schwarzschild & Sulzberger product so handled. This practice has obtained since 1901. Prior to that time the Alton Company's tariff likewise included the Belt charge, which was then $4 per car. On collecting the full tariff from the Schwarzschild & Sulzberger Company, the Alton road paid to the Belt its charge of $4 per car, whereupon the Belt gave to the packing company $1 on each loaded car handled. It was at the request of Schwarzschild & Sulzberger (for some reason which does not appear) that for this arrangement was substituted the plan evidenced in the pending cause, whereby the railway company made payment direct to the shipper (some five months after the freight went forward), instead of indirectly through the medium of the Belt line.

The indictment charges that the payment to the packing company was a rebate. The defendants contend that the payment was made by the railway company for its use of the packing company's private track, connecting its shipping dock with the Belt rails; and it is urged in behalf of defendants that, if any provision of the law has been violated, it is only that section requiring the carrier to publish any terminal charge or regulation which alters or determines the aggregate rate for the transportation of property. I am unable to see the force of this contention. The real question here is simply this:

"Has the payment back to the shipper of $1 per car out of the money paid by the shipper to the railway company in the first instance resulted in the shipper getting its property transported at a less cost to it than that specified in the published schedules?"

It would seem that to state this question is to answer it. The word "rate," as used in the interstate commerce law, means the net cost to the shipper of the transportation of his property; that is to say, the net amount the carrier receives from the shipper and retains. In determining this net amount in a given case, all money transactions of every kind or character having a bearing on, or relation to, that particular instance of transportation whereby the cost to the shipper is directly or indirectly enhanced or reduced must be taken into consideration. Applying this test to the case before me, the net cost to the Schwarzschild & Sulzberger Company has been made $1 per car less than the published schedules represented that net cost would be. Viewing the transaction from the standpoint most favorable to the defendants, it amounts to the railway company assuming the cost of getting the shipper's property to the carrier's rails for transportation—a substantial consideration not mentioned in, or contemplated by, the published schedules. With equal propriety (its schedules being silent on the subject) a carrier might, for the purpose of inducing the routing of traffic via its line, pay the consignor's and consignee's bills for the cartage of property between their warehouses and the railway depots.

The object of the statutes relating to interstate commerce is to secure the transportation of persons and property by common carriers for reasonable compensation. No rate can possibly be reasonable that is higher than anybody else has to pay. Recognizing this obvious truth, the law requires the carrier to adhere to the published rate as an absolute standard of uniformity. The requirement of publication is imposed in order that the man having freight to ship may ascertain by an inspection of the schedules exactly what will be the cost to him of the transportation of his property; and not only so, but the law gives him another and a very valuable right, namely, the right to know, by an inspection of the same schedule, exactly what will be the cost to his competitor of the transportation of his competitor's property.

It being my opinion that, when the Alton Company published a specific rate covering packing-house products, collected that rate from the Schwarzschild & Sulzberger Packing Company, and subsequently gave back part of that rate to Schwarzschild & Sulzberger, a device was employed by means of which the packing company's property was transported at a less rate than that named in the published schedules, the defendants' motion will be overruled.