UNITED STATES v. ATCHISON, T. & S. F. RY. CO.

(District Court, S. D. California, S. D.   October 11, 1907.)

No. 2,520.

CARRIERS — INTERSTATE COMMERCE—PROSECUTION FOR GRANTING REBATES—DEFENSES.

    It is no defense in a prosecution of a railroad company for granting concessions to a shipper from its published rates, in violation of Elkins Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 (U. S. Comp. St. Supp. 1907, p. 880), that such concessions were granted in compromise of claims against the company for loss of property in transit.

On Motion of District Attorney to Strike Out All Evidence with Reference to Alleged Compromises.

Oscar Lawler, U. S. Atty., and A. I. McCormick, Asst. U. S. Atty.

T. J. Norton, A. C. Van Cott, E. W. Camp, and U. T. Clatfeller, for defendant.

WELLBORN, District Judge. The Supreme Court of the United States has said:

"It cannot be challenged that the great purpose of the act to regulate commerce, whilst seeking to prevent unjust and unreasonable rates, was to secure equality of rates as to all and to destroy favoritism; these last being accomplished by requiring the publication of tariffs and by prohibiting secret departures from such tariffs, and forbidding rebates, preferences, and all other forms of undue discrimination. To this extent and for these purposes the statute was remedial and is therefore entitled to receive that interpretation which reasonably accomplishes the great public purpose which it was enacted to subserve." New Haven R. R. Co. v. Interstate Commerce Commission, 200 U. S. 391, 26 Sup. Ct. 277 (50 L. Ed. 515).

In an earlier case, involving the construction of an act of the Legislature of Colorado of the same nature as the interstate commerce act, the same high authority spoke as follows:

"This act was intended to apply to intrastate traffic the same wholesome rules and regulations which Congress two years thereafter applied to commerce between the states, and to cut up by the roots the entire system of rebates and discriminations in favor of particular localities, special enterprises, or favored corporations, and to put all shippers on an absolute equality, saving only a power, not in the railroad company itself, but in the Railroad Commissioner, to except 'special cases designed to promote the development of the resources of this state,' and not to prevent the commissioner 'from making a lower rate per ton per mile, in car load lots, than shall govern shipments in less quantities than car load lots, and from making lower rates for lots of less than five car loads than for single car load lots.' The statute recognizes the fact that it is no proper business of a common carrier to foster particular enterprises or to build up new industries, that, deriving its franchise from the Legislature, and depending upon the will of the people for its very existence, it is bound to deal fairly with the public, to extend them reasonable facilities for the transportation of their persons and property, and to put all its patrons upon an absolute equality. * * * So opposed is the policy of the act to secret rebates of this description that it requires a printed copy of the classification and schedules of rates to be posted conspicuously in each passenger station for the use of the patrons of the road, that every one may be apprised, not only of what the company will exact of him for a particular service, but what it exacts of every one else for the same service, so that in fixing his own prices he may know precisely with what he has to compete. To hold a defense thus pleaded to be valid would open the door to the grossest frauds upon the law, and practically enable the railroad company to avail itself of any consideration for a rebate which it considers sufficient, and to agree with the favored customer upon some fabricated claim for damages, which it would be difficult, if not impossible, to disprove. For instance, under the defense made by this company, there is nothing to prevent a customer of the road, who has received a personal injury, from making a claim against the road for any amount he chooses, and in consideration thereof, and of shipping all his goods by that road, receiving a rebate for all goods he may ship over the road for an indefinite time in the future. It is almost needless to say that such a contract could not be supported. There is no doubt of the general proposition that the release of an unliquidated claim for damages is a good consideration for a promise, as between the parties, and, if no one else were interested in the transaction, that rule might apply here; but the Legislature, upon grounds of public policy, and for the protection of third parties, has made certain requirements with regard to equality of rates, which in their practical application would be rendered nugatory, if this rule were given full effect. For this reason we think the railroad company is in error in its assumption that 'if, in the honest judgment of the officers of the defendant company, who made the contract, the considerations which entered into it, and upon which alone it was made were sufficient to warrant the company to pay back to the Marshall Company 40 cents per ton for each ton it shipped for five years, that is enough.' This is but a restatement in different language of a comment made by the court below in its opinion, that 'the whole answer amounts only to this: That the Marshall Company is allowed less rates than other shippers are required to pay upon considerations which are satisfactory

to defendant, and it is obvious that this is no answer to a complaint of unlawful discrimination.'" Union Pacific Railway v. Goodridge, 149 U. S. 690, 13 Sup. Ct. 975 (37 L. Ed. 986).

Again, it has been said by an eminent jurist:

"It is written in every section and line of the law that the thing sought by Congress was a fixed rate, absolutely, unvaryingly uniform, to be adhered to until publicly changed in the manner provided by law. The thing prohibited was the departure from that rate by any means whatsoever, whether direct between the parties or indirect by the employment of the most deviously circuitous subterfuge." United States v. Standard Oil Co. (D. C.) 148 Fed. 721.

Again, the same jurist has said:

"The object of the statutes relating to interstate commerce is to secure the transportation of persons and property by common carriers for reasonable compensation. No rate can possibly be reasonable that is higher than anybody else has to pay. Recognizing this obvious truth, the law requires the carrier to adhere to the published rate as an absolute standard of uniformity. The requirement of publication is imposed in order that the man having freight to ship may ascertain by an inspection of the schedules exactly what will be the cost to him of the transportation of his property; and not only so, but the law gives him another and a very valuable right, namely, the right to know, by an inspection of the same schedule, exactly what will be the cost to his competitor of the transportation of his competitor's property." United States v. Chicago & A. Ry. Co. (D. C.) 148 Fed. 648.

These statutes, as said by the Supreme Court, should be reasonably construed, so as to promote their objects, and it is manifest that a construction which allows any deviation whatever from said standard would seriously impair the efficiency of said statutes, if not render them nugatory, and is therefore wholly inadmissible. A rate, to be uniform in its operation, must necessarily be expressed in dollars or cents, and when so expressed, as is the case with the rate here involved, the mode of payment is an essential part of the rate. To so interpret the law as to allow the carrier to disregard said mode, and to accept a part only of its compensation in money and the balance in a commodity, or by way of compromising a claim, would invite and open wide a door to the very discriminations which the statutes were designed to suppress. In order to exclude such an interpretation of the law, section 1 of the Elkins Act (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880]) forbids in terms any concession by a carrier in respect of the transportation of property whereby such property "by any device whatever" is transported at a less rate than named in the legal tariff, and expressly declares that any departure from the legal tariff, or any offer to depart therefrom, "shall be deemed to be an offense under this section of this act," so that the construction of said act which I have just declared is clearly required by the letter as well as the spirit of the law.

I hold that the acceptance by the defendant of a less sum of money than that named in its tariff for the transportation of the property described in the indictment, if there has been such acceptance, was a departure from the legal rate, and that it is no justification for such a departure, nor is it any defense to a prosecution therefor, that the acts of the carrier were done in compromise of claims for loss of property in transit.

Plaintiff's motion will be allowed.