No. 27,384.

EARL C. ELLIOTT, *Appellee*, v. THE EMPIRE NATURAL GAS COMPANY and THE KANSAS GAS AND ELECTRIC COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

1. PUBLIC UTILITIES—*Authority of Commission Over Gas Rates—Jurisdiction—Evidence.* The proceedings on which an order of the public utilities commission (public service commission), was based, considered and *held,* (a) the commission had jurisdiction over the parties and subject matter, (b) there was sufficient evidence before the commission on which to base the order, (c) hearings were had by the commission upon the reasonableness of the then existing rate, (d) the commission had the authority and power to fix a temporary rate, (e) the order fixed a rate or schedule of rates.

2. SAME—*Validity of Commission's Order.* Various objections to an order of the public utilities commission (public service commission), considered and held not to be of substantial merit.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed May 7, 1927. Reversed.

*J. W. Finley,* of Chanute, *Warren T. Spies,* of Bartlesville, Okla., *H. L. Mc-Cune, R. B. Caldwell, Blatchford Downing* and *Robert D. Garver,* all of Kansas City, Mo., for the appellants.

*A. V. Roberts, Vincent F. Heibsch* and *Carl I. Winsor,* all of Wichita, for the appellee; *Robert C. Foulston* and *George Siefkin,* both of Wichita, of counsel.

The opinion of the court was delivered by

HOPKINS, J.: This appeal involves the validity of an order of the public service commission and the right of a utility to discontinue service on account of an overdue and disputed bill. Plaintiff prevailed and defendants appeal.

The facts are substantially these: The plaintiff is the city manager of Wichita and a consumer of gas in that city. The Empire Natural Gas Company (successor of the Wichita Natural Gas Company) is a pipe-line company, owning and operating a pipe line extending from the gas fields of Oklahoma northward into Kansas, through which it supplies natural gas in interstate commerce from the Oklahoma fields to various distributing companies in Wichita and other Kansas cities. The Kansas Gas and Electric Company is engaged in distributing natural gas in Wichita, procuring its supply from the pipe-line com-

Appeal and Error, 4 C. J. p. 698 n. 19. Gas, 28 C. J. pp. 576 n. 11, 577 n. 21, 578 n. 40, 586 n. 43.

pany. Previous to June 30, 1919, an arrangement existed between the pipe-line company and several distributing companies operating in south-central Kansas, including the Kansas Gas and Electric Company, by virtue of which the pipe-line company received two-thirds of the amount for which the gas was sold at the burner's tips, the local distributing company retaining the other one-third. The price for domestic gas at the burner's tips in Wichita was twenty-seven cents per thousand cubic feet. In 1919 notice was served by the pipe-line company upon all distributing companies receiving gas from it that further supply of gas would be discontinued unless the cities and distributing companies so served would agree to pay to the pipe-line company forty-five cents per thousand cubic feet instead of the amount received by it under the proportional contract above mentioned. Actions were thereupon brought by certain of the municipalities seeking to enjoin the distributing company and the pipe-line company from disturbing the then existing arrangements. Removal of the cases were had to the federal court where, upon hearing, judgment was entered for defendants and injunctions against the gas companies dissolved.

The disturbing situation in the gas business was brought to the attention of the public utilities commission (now the public service commission), and on June 30, 1919, the commission issued an order for an investigation for the purpose of approving just and reasonable rates in cities receiving their supply of gas from the pipe-line company, the Wichita Natural Gas Company. Under this order, the commission held hearings and heard testimony, July 28 and 29, and September 3, 1919.

Some of the cases which had been removed to the federal district court had been appealed, and on December 12, 1919, the circuit court of appeals, sitting at St. Louis, made an order applicable to Winfield and Arkansas City, permitting the gas companies to collect from each consumer in such cities the sum of $2 per month in addition to the net rate of twenty-seven cents per thousand cubic feet for gas delivered, beginning January 1, 1920, and extending to the first day of the month after its decision (this order in lieu of a *supersedeas*). The situation then was that the gas- companies were in position to shut off the supply to other municipalities not in such litigation. Thereupon the utilities commission called before it the pipe-line company, the Wichita Natural Gas Company, and representa-

tives of the various cities and distributing companies receiving their supply of gas from the Wichita Natural for the purpose of securing some arrangement under which the supply of gas to the several cities might be continued, all injunctions and restraining orders prohibiting such discontinuance at that time having been dissolved and the pipeline company at that time threatening to discontinue further supply. The city of Wichita was represented at such hearing and took an active part in an attempt to draft an order satisfactory to all parties. Such an agreement was not reached and on December 22, 1919, the utilities commission entered the order now in controversy. This order, after reciting the pending litigation, provided that:

"If the said Wichita Natural Gas Company shall prevail in said appeals in the said court, the local distributing company may, in each city, charge and collect from each domestic consumer of gas therein the sum of $2 per month during the time between January 1, 1920, and first day of the month following the determination of said appeals in said court, in addition to the rate in effect upon the first day of each month after the determination of said appeals in said court by the said Wichita Natural Gas Company and the local distributing company to the domestic consumer in said city."

The order further provided for an optional rate other than that named above; required notice to all consumers of the order before its effective date, and granted to the distributing companies and the Wichita Natural the same penalties to enforce the prompt payment of bills as were enjoyed under then existing rates.

Plaintiff refused to abide by such order and sued to enjoin the defendants from discontinuing his supply of gas. The case was removed to the federal court, a special master appointed who took testimony, returned special findings of fact and conclusions of law which were adopted by the federal district court and judgment entered thereon for defendants. The plaintiff appealed to the circuit court of appeals, where it was held that the court was without jurisdiction. The case was remanded to the state courts, where it was tried in the district court of Sedgwick county. Trial there on the same evidence resulted in identical findings of fact as were made in the federal court. The court, however, arrived at a different conclusion, rendered judgment for plaintiff and defendant appeals.

The trial court concluded that the order of the public utilities commission of December 22, 1919, was illegal, void and of no effect because no jurisdiction was acquired by the commission of either of the parties involved or of the subject matter of the order; because no

hearing was had upon the justness or reasonableness of the then existing rate; because no finding was made that the then existing rate was unjust and unreasonable, unjustly discriminatory or unduly preferential; because the order did not fix or purport to fix a rate or schedule of rates.

The parties involved were the city of Wichita, the distributing company and pipe-line company. The plaintiff was a citizen and gas consumer of the city of Wichita. The city of Wichita, through its representatives, was present and took active part in the proceedings before the utilities commission. Plaintiff was represented in a sense by the public utilities commission.

"Some complaint is made to the effect that the decree attempts to bind persons not parties to the suit, including thousands of subscribers, and to prohibit appellants from enforcing in the future any legislative remedy for excessive charges hereafter imposed, however unreasonable they may be. As to the first branch of the complaint, it is only necessary to say that the commission represents the public, and especially the subscribers, and they are properly bound by the decree." (*Smith v. Illinois Bell Teleph. Co.*, 270 U. S. 587, 70 L. Ed. 747.)

"The city was the proper party to make defendant in the suit as representative of all interested, and so throughout the whole proceedings. If we may suppose in a case like the present one there can be a distinction between the public interest and private interest, the subscribers of the company being the public, the representation of both interests was adequately fulfilled. . . . As was said by Mr. Justice Miller in *Chicago, M. & St. P. Ry. Co. v. Minnesota*, 134 U. S. 418, 460 [33 L. Ed. 970, 982, 3 Inters. Com. Rep. 209, 10 Sup. Ct. p. 702], it was not competent for each individual having dealings with the regulated company 'to raise a contest in the courts over the questions which ought to be settled in this general and conclusive way.' The rule has been repeated in subsequent cases." (*In re Englehard*, 231 U. S. 646, 58 L. Ed. 416. See, also, *San Francisco G. & E. Co. v. City of San Francisco*, 164 Fed. 884, and authorities cited therein.)

The commission had authority to fix the rates to consumers in the city of Wichita and other municipalities on the lines of the pipe-line company even though in so doing it abrogated contracts between the municipality and the distributing company. (See *City of Winfield v. Court of Industrial Relations*, 111 Kan. 580, 207 Pac. 813, 263 U. S. 683, 68 L. Ed. 503.) In the Winfield case it was pointed out that the city is a creature of the state whose destiny as to its public utilities has been intrusted to an agency of the state, *i. e.*, the public utilities commission. So far, therefore, as the city of Wichita was concerned, the jurisdiction of the commission was complete. In the same way, it had complete jurisdiction over the

distributing company except as it might be protected by its own contractual rights. The distributing company, however, made no objection to the entry of the order. On behalf of the plaintiff it is contended that under the authority of *Kansas Natural Gas Company v. State of Kansas*, 265 U. S. 298, 68 L. Ed. 1027, the utilities commission had no jurisdiction of the pipe-line company. Such an objection might be urged by the pipe-line company, not by the plaintiff or the city of Wichita.

On the question as to whether or not the commission had jurisdiction over the subject matter of the order, it is contended that the order did not fix or purport to fix a rate or schedule of rates. A portion of the order reads:

"It is therefore ordered that the following rates shall be put into effect in all of the cities and by all of the distributing companies to consumers and patrons therein which are now being served by the Wichita Natural Gas Company, excepting the cities and distributing companies affected and included in the orders of the circuit court of appeals entered December 13, 1919, at St. Louis; that said rates, schedules of rates, shall be as follows: That during the pendency of said appeals the Wichita Natural Gas Company shall not put into effect any rate, either to the local distributing company or to the domestic consumer for gas in excess of thirty cents per thousand cubic feet, nor refuse to supply gas to the local distributing company, or the domestic consumers of any of the cities served by the Wichita Natural Gas Company on account of a refusal to pay at a rate in excess of said sum of thirty cents per thousand cubic feet for gas furnished to domestic consumers as herein ordered.

"It is further ordered: That if the said Wichita Natural Gas Company shall prevail in said appeals in the said court, the local distributing companies may in each city charge and collect from each domestic consumer of gas therein the sum of $2 per month during the time between January 1, 1920, and the first day of the month following the determination of said appeals in said court, in addition to the rate in effect upon the first day of each month after the determination of said appeals in said courts by the said Wichita Natural Gas Company and the local distributing company to the domestic consumer in said city. That in the event the Wichita Natural Gas Company prevails in said appeals in said court, the said sum of $2 per month to be collected shall be placed upon the customer's bill upon successive months at the rate of $2 per month until paid; provided that the customer in each of said cities shall have the option of paying in lieu of said rate in the manner and form provided for the payment of the above rates, a rate of fifty cents per month and fifty cents per thousand cubic feet for the actual amount of gas consumed by him, and that said charge of fifty cents, and the excess of twenty cents, per thousand cubic feet over the present rate, shall be charged and collected in the same manner as is provided for the charge of $2 per month herein."

Elliott v. Empire Natural Gas Co.

The commission undoubtedly regarded it as a rate when they so expressed it in their order.

"The word 'rate' as used in the interstate commerce law, means the net cost to the shipper of the transportation of his property; that is to say, the net amount the carrier receives from the shipper and retains." (*United States v. Chicago and Alton Ry. Co.*, 148 Fed. 646, 647.)

It is contended that the utilities commission had no power to fix temporary rates. In *City of Winfield v. Court of Industrial Relations,* supra, it was said:

"Another objection is that the order was one of limited duration—for six months. With the expansion of governmental control of public utilities, this form of regulation has become common, and is less objectionable than orders which perhaps upon insufficient information might be promulgated without such limitation. In the governmental control of public utilities, it can seldom be predetermined with certainty that a rate, a regulation, a service will be compensatory, practical, satisfactory, and so experimental orders are proper. If time vindicates their wisdom and justice, their duration may be permanently established; if not, they may terminate without further action and without provoking needless litigation." (p. 587.)

In *Chicago Rys. Co. v. City of Chicago,* 292 Ill. 190, 126 N. E. 585, it was said in the opinion:

"To sustain the judgment of the circuit court, it is insisted that the commission had no authority to fix a temporary rate based upon increased operating expenses, and could only make a change upon a full hearing and examination which would demonstrate what a permanent rate ought to be. So far as we have been informed, every court which has considered that question has decided to the contrary. (*Omaha & Council Bluffs Street Railway Co. v. Nebraska City Railway Com.,* [Neb.] 173 N. W. 690; *City of Charleston v. Public Service Commission,* [W. Va.] 99 S. E. 63; *Kansas City v. Public Service Com.,* [276 Mo. 539] 210 S. W. 381; *O'Brien v. Public Utility Board,* [92 N. J. Law, 44] 105 Atl. 132.)" (p. 202.)

It is contended that no hearing was had by the utilities commission upon the reasonableness of the then existing rate. The caption of the commission's docket in the matter reads:

"In the matter of the investigation of rates for the sale and distribution of gas at Hutchinson, Newton, and the cities supplied by the Western Distributing Company, and other cities engaged in the sale and distribution of natural gas receiving their supply from the Wichita Natural Gas Company."

The commission's initial order in the case reads:

"It is hereby ordered, that the public utilities commission for the state of Kansas shall undertake and enter upon an investigation on its own motion for the purpose of fixing and establishing just and reasonable rates for the

sale and distribution of natural gas to the consumers by respondents in said cities, and for the purpose of receiving testimony, and entering such further orders as may be found legal and just in the premises. The distributing companies engaged in the sale and distribution of gas in the cities which follow their names, as hereinafter enumerated, are hereby made respondents in this proceeding and the secretary is hereby directed to notify them to appear at the hearing room of this commission at Topeka, Kansas, on July 28, 1919, at 10 o'clock a. m., or as soon thereafter as the said hearing may be reached in its regular order on the hearing docket of this commission, for the purpose of offering evidence, tendering such information as shall be of assistance to the commission in such investigation, and making such showing as the respondents may elect as to whether any rates proposed for the future by such respondents are reasonable and just."

A subsequent order of August 17, 1920, stated: "The evidence having been taken at previous hearings." The court's tenth finding of fact reads:

"Tenth: That considerable testimony was taken relating to the three-part rate and concerning the gas supply on the 28th and the 29th days of July, 1919, and an adjourned hearing was had in said docket No. 2978 and on the 3d day of September, 1919, and that on the 22d, 23d and 27th days of July, 1920, further hearings were had in said matter."

It is apparent that there was evidence informing the commission of all facts necessary for its determination of a reasonable rate. The evidence went to the question of the reasonable value of gas. The matter of form and amount of rates were left open for the consideration of the commission upon all the evidence adduced. The evidence offered in connection with the purpose of the commission and the investigation justified any reasonable rate. It may be noted that the necessity for a temporary order, or putting into effect of a temporary rate, did not arise until the injunctions were dissolved and a discontinuance of the supply of gas by the pipe-line company was pending. Some action was then required in order that the various cities receiving gas from the pipe-line company should not be without a supply. All parties were called before the utilities commission on December 22, 1919, were given an opportunity to state their views and to present any evidence they desired. In *Railroad and Light Co. v. Court of Industrial Relations*, 113 Kan. 217, 214 Pac. 797, it was said in the opinion:

"The commission may gather its facts in the most informal way, and may and should avail itself of all reports and data gathered by its own staff of engineers, statisticians and accountants; but it is only fair that all such facts, data and reports, wheresoever gleaned, should be presented in public so that

Elliott v. Empire Natural Gas Co.

the parties to be affected by the commission's determination may show, if they can, by cross-examination or otherwise, that such data and reports are either inaccurate, fallacious or incomplete, or not of controlling significance. In no other way can the commission itself be sure that it is doing approximate justice to those concerned. We have said that the formalities of a judicial court need not be followed, but this is really no detriment to the parties; it facilitates the development of the facts; and it is because of the free and easy procedure permissible before the commission that a trial *de novo*, not a mere appeal, is accorded in a judicial court from the orders of the commission. So long as a judicial hearing *de novo* is provided, it is not very important just what sort of evidence is received by the commission or how it is received if the parties concerned are apprised of it." (p. 236.)

Furthermore, it is presumed that there was ample evidence to warrant the action of the commission.

"All orders, . . . shall be *prima facie* reasonable unless, or until, changed or modified by the commission, or in pursuance of proceedings instituted in court as provided in this act." (R. S. 66-115.)

No proceedings were instituted as provided and the order has never been changed or modified. The order is therefore *prima facie* reasonable.

"Section 18 of the (public service commission) act makes the orders of the commission *prima facie* reasonable. As the record fails to show what evidence was before the commission when it made its order, and recites that evidence was introduced, there is nothing to enable the court to find that the order was unreasonable, or without substantial evidence. The presumption is that there was substantial evidence to warrant the findings made." (*Public Utilities Commission v. Wichita R. & Light Co.*, 268 Fed. 37, 44.)

It is contended that the order was void because it contained no finding that the then existing rate was unreasonable, unjustly discriminatory or unduly preferential. None was required.

". . . The question involved, however, is not whether it is necessary for the utilities commission to find that an existing rate is too high or too low, before it can change it, but whether in order to give validity to such an order there must be inserted therein an express recital that the commission has so found. In our judgment a finding by the commission that an existing rate requires change for some of the statutory reasons may be, and in this case should be, presumed or inferred from the fact that a change is made, without an express declaration to that effect being incorporated in the order. During the fourteen years since the creation of the utilities commission, and the ten years additional in which the railroad commission act contained a somewhat similar provision (Laws 1901, ch. 286, § 18), that question has not been presented to this court. The practice, amounting to an operative interpretation of the statute, has been not to insert such explicit recitals in orders of the commission, and orders made without them have been repeatedly upheld." (*Con-*

*solidated Flour Mills Co. v. Kansas Gas and Electric Co.,* 119 Kan. 47, 49, 237 Pac. 1037. See, also, *Alabama Water Co. v. City of Attalla,* 211 Ala. 301; *Public Service Com. v. City of Indianapolis,* 193 Ind. 37; *S. D. Warren Co. v. Maine Cent. R. Co.,* 135 Atl. 526 [Me.]; *Riverside Oil Co. v. Hitchcock,* 190 U. S. 316, 47 L. Ed. 1074.)

Various objections of the plaintiff to the commission's orders and the authorities in support thereof have been considered but cannot be sustained.

The judgment is reversed and the cause remanded with directions to render judgment for defendants.