No. 29,351.

The Atchison, Topeka & Santa Fe Railway Company, *Appellant*, v. The Public Service Commission of the State of Kansas and The Blue Bird Transportation Company, *Appellees*.

(288 Pac. 755.)

Opinion filed June 7, 1930.

*William R. Smith, Owen J. Wood, Alfred A. Scott* and *Alfred G. Armstrong*, all of Topeka, for the appellant.

*J. W. Blood, F. W. Prosser*, both of Wichita, *Charles W. Steiger*, of El Dorado, and *C. J. Putt*, of Concordia, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This is an injunction action brought by the plaintiff railway company against the public service commission and the Blue Bird Transportation Company to enjoin them from en-

forcing or putting into operation a certain order of the commission granting the transportation company a certificate of convenience and necessity to operate a motor bus line as a common carrier between Wichita and Kansas City and intermediate points, and to vacate, set aside and hold for naught such order issued under chapter 206 of the Laws of 1925. The trial court denied the injunction and refused, to vacate or set aside the order, and held the transportation company was entitled to a certificate of convenience and necessity, from which order the plaintiff railway company appeals.

The petition for injunction recited the proceedings before the public service commission, including the application of the bus company, the giving of the notices and the appearance and protests of the plaintiff railway company and two other railroad companies, an interurban railway company and a bus-line company. The plaintiff in its petition alleged that all the cities and towns along the proposed bus line were being supplied with adequate transportation facilities by the railroads of the plaintiff and other protestants, and that there was no public need of a bus line paralleling plaintiff's railway line, and attached to the petition a complete transcript of all the evidence recieved on the hearing before the commission. Plaintiff challenged the legal sufficiency of the evidence for the purpose of granting a certificate of convenience and necessity, claiming and requesting a judicial review of the law and the facts and an injunction because of the insufficiency of facts.

Answers were filed by the commission and the transportation company, and after the issues were formed the trial court, over the objection of the plaintiff, proceeded to hear and try the case *de novo*.

The contention of the appellant is that when a transcript of all the evidence heard by the commission is attached to the petition, as in this case, the action takes the nature of an appeal from the order of the commission, and plaintiff is entitled to a judicial review in the district court where the petition was field, and failure and refusal of the trial court to so try the case was error.

Chapter 206 of the Laws of 1925 provides in section 10 that all orders of the public service commission granting certificates of convenience and necessity to the bus lines shall become operative and effective within thirty days "unless said order is enjoined or set aside in a court of proper jurisdiction." In section 2 of the same act it is provided that—

"All laws relating to the powers, duties, authority and jurisdiction of the

public utilities commission over common carriers are hereby made applicable to all such motor carriers, except as herein otherwise specifically provided."

Chapter 258 of the same session changed the name of the commission from public utilities commission to public service commission without in any way changing the jurisdiction or procedure theretofore had and authorized.

R. S. 66-118 provides that—

"Any common carrier or public utility governed by the provisions of this act, or other party in interest, being dissatisfied with any order of the commission . . . may, within thirty days from the making of such order, commence an action in a court of competent jurisdiction, against the public utilities commission as defendant, to vacate and set aside any such order, finding or decision of the public utilities commission . . . and such action shall be tried and determined as other civil actions."

In the decision rendered in an appeal in six injunction cases against the court of industrial relations involving orders fixing rates it was said in the opinion:

"Complaint is made because the trial court considered evidence of facts and conditions arising subsequent to the date of the order. . . . Was the admission of this evidence erroneous? A lawsuit over a rate order made by the commission is a trial *de novo*. The issue is the reasonableness of the commission's order. Any competent evidence is admissible." (*Railroad and Light Co. v. Court of Industrial Relations,* 113 Kan. 217, 233, 214 Pac. 797.)

One paragraph of the syllabus in this case is as follows:

"So long as a judicial trial *de novo,* not a mere appeal, is accorded to any party aggrieved by an order of the public utilities commission, the proceedings before the commission may be conducted without much regard to formality." (Syl. ¶ 12.)

This decision was cited with approval in *Elliot v. Empire Natural Gas Co.,* 123 Kan. 558, 256 Pac. 114.

The distinction between appellate and original jurisdiction and between cases calling for review on account of errors, or for trial *de novo,* is well stated in the opinion in the case of *In re Burnette,* 73 Kan. 609, 85 Pac. 575. (See, also, 4 C. J. 726.)

The appellant availed itself of the relief prescribed by statute to have the order set aside and to enjoin its enforcement. That proceeding was not an appeal, neither was it one for review of the former hearing, but it was an application to a judicial tribunal for a trial *de novo* of the rights involved in the hearing before the commission.

Appellant insists that there was absolutely no evidence to support

the order of the commission in granting the certificate of convenience and necessity under chapter 206 of the Laws of 1925, which requires a showing that the present serving rail facilities are inadequate and inconvenient to the traveling public and the proposed facilities will eliminate such inadequacy and inconvenience, and cites the case of *Int. Com. Comm. v. Louis. & Nash. R. R.*, 227 U. S. 88, where it is forcibly and logically concluded that "a finding without evidence is beyond the power of the commission." (p. 92.)

Appellant also cites a number of other strong cases along the same line and to the same effect, which doctrine must be fully conceded.

The difficulty in the present case lies not so much in law as in the question of whether the evidence introduced furnished any proof on these points before the commission, the contention being that regardless of the showing made in the district court upon the trial of this cause, if there had been no evidence whatever furnished in the hearing before the commission upon the essential points, the certificate would have been improperly issued and should not be enforced. Many of the same eminent authorities cited by appellant on this question also criticize severely the reliance by commissions on unsworn documents, letters and recommendations being used as evidence in the case, because the privilege and right of cross-examination is thus cut off, and for other good reasons. Counsel for appellee frankly admit that such evidence is not the best and is questionable as to its competency. The objection goes to a number of letters introduced in the hearing before the commission that were addressed to the commission, purporting to have been written by men occupying prominent business positions in Wichita and other points along the proposed bus line, commending the project and the men back of it, some of the letters referring to the inadequate facilities that existed and that the proposed line would afford transportation facilities that were needed by the public and in great demand. Our own court has taken the liberal view as to the consideration of this character of evidence by the public service commission, as expressed in the industrial court case, above cited, where it was said:

"The commission may gather its facts in the most informal way, and may and should avail itself of all reports and data gathered by its own staff of engineers, statisticians and accountants; but it is only fair that all such facts, data and reports, wheresoever gleaned, should be presented in public so that the parties to be affected by the commission's determination may show, if they can, by cross-examination or otherwise, that such data and reports are

either inaccurate, fallacious or incomplete, or not of controlling significance. In no other way can the commission itself be sure that it is doing approximate justice to those concerned. We have said that the formalities of a judicial court need not be followed, but this is really no detriment to the parties; it facilitates the development of the facts; and it is because of the free and easy procedure permissible before the commission that a trial *de novo,* not a mere appeal, is accorded in a judicial court from the orders of the commission. So long as a judicial hearing *de novo* is provided, it is not very important just what sort of evidence is received by the commission or how it is received, if the parties concerned are apprised of it." (p. 236.).

Appellant insists that these letters constituted the sole and only pretense at proof before the commission on the essential subjects of inadequacy of existing service and facilities, that the proposed facilities will eliminate the same, and that there is a public need and demand for such additional facilities. Even if these letters should be entirely eliminated from consideration, we have remaining the condition of the country which the bus line proposes to serve with additional facilities; we have the schedules of present service by the rail lines and from these and similar facts furnished the commission in the form of unquestionably admissible and competent evidence, the commission might very properly determine these points essential to the granting of a certificate.

"The public convenience and necessity, or lack thereof, is established by proof of the conditions existing in the territory to be served, and it is the function of the commission to draw its own conclusion and form its own opinion from the proof of the conditions in the territory, rather than from the consensus of opinions of witnesses upon the ultimate fact as to the existence or nonexistence of the public necessity and convenience." (*Eager v. Pub. Util. Comm.,* 113 Ohio St. 605, 607.)

The evidence before the commission at the hearing aside from the letters showed the train schedules of the appellant and other railways between Wichita and Kansas City, the stations at which each particular train stopped or did not stop, the flag stops for different trains, the times of arrival and departure of the trains at each stopping point, the opportunities for making trips to larger centers and returning the same day or earlier during the day, and for the transaction of business at such centers during business hours, the population of each of the towns on the proposed route, the distances between the several towns and stations on the line, the kind of road as to its being dirt, sand, gravel or cement, and the condition of same, the proposed schedule of the bus line, with times of departure

and arrival, the kind of conveyances and busses intended to be used, the names and business of the officers and directors of the bus company, their financial strength and that of the new company, the cost of bus transportation per mile and the number of calls per day at the Wichita bus terminal for interstate and for intermediate transportation during a few weeks preceding the hearing. Applying to these facts the rule stated in the Ohio decision, above cited, it cannot be said there was no evidence before the commission as to the public convenience and necessity or lack thereof along the proposed bus line, or that the certificate was issued without any evidence to support it.

The trial of this injunction suit was had on April 15, 1929, at which after the close of the plaintiff's case the defendant introduced four witnesses residing in four different localities along the proposed line, who testified to some features of local inconvenience in going to and returning from business centers by rail and to the need of bus facilities to make such trips more conveniently and quickly, sometimes to avoid a going or returning trip in the night, or to avoid making the trip in their own automobiles. At the close of the testimony the court made findings of fact and conclusions of law.

The first eight findings were concerning the parties generally and the hearing before the commission. The ninth was as follows:

"The motor carrier route over which the Blue Bird Transportation Company proposed and proposes to operate closely parallels the railway line of the Atchison, Topeka & Santa Fe Railway Company, in that with the exception of two towns all of them are located on the lines of the Atchison, Topeka & Santa Fe Railway Company. If the order of the commission is permitted to stand the Blue Bird Transportation Company will compete with the Santa Fe at Wichita, Newton, Peabody, Florence, Cedar Point, Clements, Elmdale, Cottonwood Falls, Saffordville, Plymouth, Emporia, Eskridge, Topeka, Lawrence and Kansas City, Kan., the only exception being that the Blue Bird Transportation Company will haul no passengers from Topeka to Lawrence and Kansas City, Kan., and between Wichita and Walton and vice versa. This is an arrangement made to protect another existing bus company and the interurban company, and not the railway line."

The next fifteen findings gave the train service of each of the fifteen towns along the line had with other towns and cities, and each of them concluded with the following sentence:

"The court finds that this constitutes adequate and sufficient train service to and from the several points involved, for a community of this size, and the trade territory tributary thereto."

Finding No. 25 shows that these fifteen towns now served by plaintiff railway company are on the proposed bus line; also Eskridge, on a branch line of the plaintiff, and that Admire and Dover are on the bus line, but not served by the plaintiff company.

Finding No. 26 is as follows:

"The service given by the railroad company between the several points involved is sufficient for train service, but local transportation service between these points is inadequate and inconvenient in that the local train service is so arranged that it does not provide the convenient transportation service between the points for local use."

Finding No. 27 gives an outline of the service to the different towns by the different trains by number.

The last four findings are as follows:

"The court further finds that the country through which the plaintiff operates its line of railroad and through which the bus company proposes to operate is a thickly settled farming country and the service rendered by the bus company is a different kind of transportation than that rendered by the railroad company, and that the bus company serves a local pick-up that is not covered by the railroad.

"The court finds there is a need for more adequate local transportation than is furnished by the railroad company, and that there is a demand for such transportation as is furnished by the bus company in the country, towns and villages along the route used by it.

"The towns covered by the bus company and railroad company from Wichita to Emporia have no other direct means of reaching the towns of Admire, Eskridge and Dover except by the operation of the bus company.

"The court further finds that upon the hearing before the commission the commission had before it evidence of the population of the towns through which the railroad and the bus company operated. Also the character of the service that was already being furnished by the railroad company, and that under such evidence the order issued by the board was not unreasonable and was sufficient to justify the commission in issuing the certificate to the Blue Bird Transportation Company, and the court further finds that said Blue Bird Transportation Company is able to carry out the schedules proposed or ordered by the public service commission."

These findings bring the case within the generally accepted meaning of necessity, not an absolute need nor a need of few individuals, but a need of the public as well as a convenience of the public.

"The word 'necessity' means a public need, without which the public is inconvenienced to the extent of being handicapped in the pursuit of business or wholesome pleasure or both—without which the people generally of the community are denied, to their detriment, that which is enjoyed by other people generally, similarly situated." (*Chicago, R. I. & P. Ry. Co. v. State,* 126 Okla. 48, syl. ¶ 1.)

This does not mean that the rail service as such is in any way inadequate as the trial court found, but an adequate rail service may not and cannot always afford an adequate general transportation service.

Under the court's finding, additional rail facilities by causing other trains to stop at small towns or by putting.on additional trains to meet the general transportation need and convenience under present conditions would not and could not be required; neither would the granting of a certificate of convenience and necessity to another parallel and competing railroad be reasonable, necessary or proper. Convenience and necessity consist largely in the changing conditions and the demands of the times, the same as there arose years ago for railroad facilities as against existing canal and river transportation facilities.

We have no difficulty in finding sufficient evidence to fully support the findings of the trial court in general and also the one where the finding of the commission is so supported and approved, and we concur with the trial court in the conclusions of law justifying the commission in the issuance of the certificates of convenience and necessity.

"In the granting or withholding of certificates of convenience no justiciable question touching confiscation of property or impairment of vested rights can well arise. Time and again this court, in consonance with the prevailing attitude of courts throughout the country, has declared that it will not substitute its judgment for that of some administrative tribunal created by legislative authority for dealing with matters of nonjudicial character." (*Kansas Gas & Electric Co. v. Public Service Com.*, 122 Kan. 462, 468, 251 Pac. 1097.)

We conclude there was no error in refusing to modify or set aside certain findings of fact, nor in denying the injunction.

The judgment is affirmed.