No. 30,622.

THE SOUTHERN KANSAS STAGE LINES COMPANY, *Appellee*, v. THE PUBLIC SERVICE COMMISSION OF THE STATE OF KANSAS, JESSE W. GREENLEAF, CHARLES D. SHUKERS, CLINTON H. MONTGOMERY, Members thereof, THE ARK WAREHOUSE COMPANY and THE ARK WAREHOUSE TRUCK LINE, *Appellants*.

(11 P. 2d 985.)

Opinion filed June 4, 1932.

*Albert Faulconer, Kirke W. Dale, C. L. Swarts*, all of Arkansas City, *Charles W. Steiger* and *Earl H. Hatcher*, both of Topeka, for the appellants.

*J. W. Blood* and *F. W. Prosser*, both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a suit to set aside and enjoin an order of the public service commission which granted a certificate for the operation of a truck line.

In May, 1930, the Ark Warehouse Company made application to the public service commission for a certificate of convenience and necessity to operate trucks for carrying property between Wichita and the Kansas-Oklahoma state line. The proposed route was to run through the intermediate points of Derby, Udall, Mulvane, Akron, Winfield and Arkansas City.

A public hearing was set for June 16, 1930, at which time representatives of four truck lines, one railway company, and the Southern Kansas Stage Lines Company, plaintiff herein, appeared and resisted the application. The applicant, the Ark Warehouse Company, adduced testimony to show that it had adequate assets, equipment and related facilities to engage in the proposed business; that it was already hauling a large volume of traffic incidental to its general corporate business; that in the five months preceding the hearing it had received 760,000 pounds of personal property for redistribution; that it had available fifty-four tons per month, half of which was for redistribution in consignments which would not pay to handle for each consignee separately; that Arkansas City was a jobbing center which originated a large amount of freight shipments in small consignments which could only be handled economically and profitably by combining them for delivery; and that there was no truck-line service between Wichita and Arkansas City on the north-and-south route proposed by the applicant. It also submitted a considerable number of "commitments" from merchants of Arkansas City and Winfield reciting that it would facilitate the dispatch of their business to have the proposed service, and that they intended to patronize it if the applicant were granted the desired certificate of convenience and necessity. One concern, the Keefe-LeStourgeon Packing Company, which was connected with the applicant through common interests of some sort, signified its desire to turn over its large volume of delivery business to the applicant.

To resist the granting of the certificate it was shown that there was a truck line between Mulvane and Wichita, but not operating through Derby on the route proposed by the applicant. It was also shown that two competing truckmen operated between Udall and

Wichita by another route than that proposed by the applicant, but these two gave no service between Udall and Mulvane, nor between Udall, Mulvane and Derby, nor between Mulvane, Derby and Wichita. Another truck operator gave local service between Winfield and Udall. The Southern Kansas Stage Lines Company, plaintiff therein, maintained a truck line operating between Wichita, Winfield and Arkansas City via Waco, Riverdale, Wellington and Oxford. This route is quite different from that of the proposed line of the applicant, until Winfield is reached, but from that point the two routes would coincide to Arkansas City. The evidence tended to show that at the common points en route there was no particular complaint with the service being supplied by the plaintiff; that it was adequately equipped and ready to meet the demands of increasing traffic in the territory it served and that if the applicant were permitted to establish the proposed line it would cut deeply into plaintiff's business. However, the traffic manager of the plaintiff did testify that—

"We do not haul anything for the Keefe-LeStourgeon Company. The 700,000 or 800,000 pounds of that freight we are not hauling, and we would not lose anything if the Ark Warehouse Company should haul that—it would not hurt us. We do not have any service out of Winfield, only to Oxford, west and a little north. There is nothing about any of the service proposed here that would affect us other than Winfield, Arkansas City, and Wichita. We don't render any service to any of these other towns."

It is needless to set out the testimony in greater detail; but it should be remarked that it was shown without dispute that the truck-line business is presently in the course of rapid expansion, a recent phase of it being the development of interline hauling through coöperative arrangements between connecting truck lines, the limits of which it is not possible at present to predict or foresee.

The commission granted the certificate applied for with certain restrictions to protect the business of some small truck operators along parts of the proposed route. In part it reads:

"On this seventh day of November, 1930, . . . being duly advised . . . finds that public convenience will be promoted by the creation of the service hereinafter set forth, and that a certificate should be issued to the Ark Warehouse Company, operating under the name and style of Ark Warehouse Truck Line, in accordance with the provisions of section 4, chapter 206, Laws of Kansas 1925.

"Now, therefore, a certificate of public convenience and necessity is hereby issued to Ark Warehouse Company, operating under the name and style of Ark Warehouse Truck Line, to operate as a motor carrier for the transporta-

tion of property for hire between fixed termini and over a regular route as follows, to wit:

"Between Kansas-Oklahoma state line and Wichita, Kan., through Derby, Udall, Mulvane, Akron and Winfield, all as more fully described in schedule A attached to the application herein and made a part hereof, to be designated and known as route No. 442: *Provided, however,* that said grantee is to do no business out of Winfield for Udall, or from Wichita to Udall; and no business out of Wichita to Mulvane, or from Mulvane to Wichita, Kan."

Plaintiff brought suit to prevent the commission and the Ark Warehouse Company and the Ark Warehouse Truck Line from putting the order into effect and to enjoin the operation of a truck line under the certificate of convenience and necessity which the commission had granted.

The cause was tried on the record made before the commission. The trial court made findings of fact and conclusions of law to which space must be given:

"FINDINGS OF FACT.

"1. That the Southern Kansas Stage Lines Company operated a freight route under a certificate granted by the public service commission of Kansas, and has been operating under said certificate for some time prior to the application of the Ark Warehouse Company.

"2. That the route of the Southern Kansas Stage Lines Company and the applicant, the Ark Warehouse Company, are identical as far as doing business is concerned.

"3. That there has been no complaint filed with the commission against the Southern Kansas Stage Lines Company as to its service under said certificate.

"4. That there is not sufficient showing of the public necessity and convenience for two competing truck lines between Wichita and Winfield and Arkansas City.

"5. That the establishment of another truck line will divide the business now hauled by the present holder of a certificate and reduce its profit and cripple its service.

"6. That the commission failed to take into consideration the service of the certified carrier of a similar kind and the effect of the granting of a new certificate on the business of the present carrier.

"CONCLUSIONS OF LAW.

"1. That the convenience of some private individual or corporation, or one or two shippers, is not the intent of the law, but it must be a public convenience and necessity, which the evidence in this case does not show.

"2. That the intent of the Kansas law is regulatory and not competitive; that this is shown by chapter 236 of the Session Laws of 1931.

"3. That the commission failed to comply with the mandatory provision of the law, with reference to granting an overriding certificate.

"4. That the action of the commission is arbitrary and did not take into

consideration the effect of competing service on the present carrier, whose service is adequate and is admitted to be good, and as to which no complaint has ever been filed with the commission. This principle is shown by act of the commission in denying applicant the right to do business at Udall and Mulvane.

"5. That the prayer for a permanent injunction should be allowed."

Defendants' motions to set aside certain findings and to grant a new trial were overruled. The trial court granted the injunction as prayed for, and defendants appeal.

It may serve to shorten discussion to note particularly the scope of judicial review which may be had of an order of the public service commission. The statute provides that within thirty days after an order or decision has been made and rehearing has been had or denied, any party dissatisfied with the order may apply to the proper district court for a review. (R. S. 1931 Supp. 66-118b, 66-118c.) A transcript of the pleadings, applications, proceedings, orders, decisions, and of the evidence pertaining thereto which was the basis of the commission's order or decision must be filed in the district court. On order of court the record may be abstracted, and the cause is to be heard on briefs and arguments. The limits of the court's power of review are as follows:

"Said proceedings for review shall be for the purpose of having the lawfulness or reasonableness of the original order or decision or the order or decision on rehearing inquired into and determined, and the district court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable. . . . No court of this state shall have power to set aside, modify or vacate any order or decision of the commission except as herein provided." (R. S. 1931 Supp. 66-118d.)

"No new or additional evidence may be introduced upon the trial or any proceedings for review under the provisions of the act, but the cause shall be heard upon the questions of fact and law presented by the evidence and exhibits introduced before the commission and certified by it. . . ." (R. S. 1931 Supp. 66-118f.)

A consideration of these statutory provisions makes it clear that an appellate review of an order of the commission is limited to a determination of two main questions: Was the order unlawful? Was it unreasonable?

Touching the first of these, an order of the commission, as of any other official board or officer having statutory duties to perform in the sense here used, is unlawful if the forms of law prescribed by statute have not been followed in the proceedings leading up to it

and included in its terms. Where the prescribed procedural forms have been followed in making the order it is not unlawful. (*State v. Frazier,* 54 Kan. 719, 39 Pac. 819; *Stouffer v. Harlan,* 68 Kan. 135, 145, 74 Pac. 610.) It is not so easy to define what is meant by the term "unreasonable" as used in this statute. The act itself prescribes no standard by which to test the validity of an order of the commission assailed on the ground that it is unreasonable. In *Railroad Co. v. Utilities Commission,* 95 Kan. 604, 615-622, 148 Pac. 667, the court dealt at some length with the legislative use of the words "unreasonable," "unjust," "oppressive" and "unlawful," in the utilities act, and held that they were not synonymous with the word "confiscatory," and that they should be given their fair and reasonable import according to the usages of courts of equity. In Soule's Dictionary of English Synonyms, "unreasonable" is set down as conveying the same idea as "irrational, foolish, unwise, absurd, silly, preposterous, senseless, stupid, injudicious, nonsensical, unphilosophical, ill-judged, exorbitant, extravagant, unfair, unjust, extortionate, excessive." The word is most commonly used by lawyers and judges as a qualifying adjective in such expressions as "unreasonable time," "unreasonable delay," "unreasonable force" and the like, in which sense it means "more than fair and proper under the circumstances." Ordinarily the question whether such time, delay, or force, was more than fair and proper under the circumstances is left for the determination of the triers of fact, whether court or jury. It is only when such determination is so wide of the mark as to be outside the realm of fair debate that the courts may nullify it. The same regard should be given to the informed conclusions of fact made by the public service commission. Where its findings of fact are based upon substantial evidence and the other matters shown by the record with which that tribunal is authorized to deal, a court is not justified in setting its orders aside because the record shows that a different order or decision than the one made by the commission could fairly have been based thereon. Indeed, there are narrow limits to the authority which the legislature could confer on the court to deal with the sort of powers which may properly be vested in an official board like the commission.

In *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, the power of the court to review the action of the board of equalization in fixing the valuation of property for purposes of taxation was drawn in question. This court said:

"Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. . . . But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity." (p. 636.)

In *State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606, where an order of the state board of railroad commissioners, predecessor of the public service commission, was assailed, this court said:

"There is nothing substantial in the contention that the statute authorizes the court to try the whole controversy and make such orders as it may deem reasonable and just, and that the order when reviewed and revised becomes a judicial order. This court is not given authority by the act to make any rule, order or regulation.

"Its authority is limited to the inquiry whether the order already issued is reasonable and just." (p. 486.)

In *Photoplay Corporation v. Board of Review*, 102 Kan. 356, 169 Pac. 1154, the scope of judicial power conferred on the court to review an order made by the board of censors of motion pictures was considered. This court said:

"[The statute] provided that if a party felt aggrieved at a disapproval of a picture by the board redress may be had in the district court of the county where the office of the board was located. What is the redress provided? Manifestly, it is such redress as a court can give, and not an exercise of executive or administrative power. A reëxamination of the picture to determine whether it was moral and fit for exhibition would be an exercise of administrative power, and that discretion and power was specially conferred upon the board. It would result in the substitution of the judgment of the court for that of the board in a pure matter of administration, which the legislature could not and evidently did not intend to confer upon the district court. It is fundamental that courts cannot be required or permitted to exercise any power or function except those of a judicial nature. (*Auditor of State v. A. T. & S. F. Railroad Co.*, 6 Kan. 500.) An aggrieved party may call on the court for judicial redress and not for the performance of a nonjudicial or administrative function. If the board abuses its authority and acts arbitrarily or fraudulently, redress from the courts may be had, and this was the redress provided for in the section in question." (p. 358.)

So, too, it has been held that the question whether a competing gas company should be permitted to operate in territory already preëmpted by another gas company has been held to be a legislative

and administrative problem and not one for judicial determination. *(Kansas Gas & Electric Co. v. Public Service Com.,* 122 Kan. 462, 251 Pac. 1097; *Wichita Gas Co. v. Public Service Com.,* 132 Kan. 459, 295 Pac. 668.) It has been held that the court will not substitute its judgment for that of the charter board in granting or withholding a charter to engage in business as a banking corporation. *(Schaake v. Dolley,* 85 Kan. 598, 610, 616, 118 Pac. 80. See, also, *Jackman v. Public Service Commission,* 121 Kan. 141, 245 Pac. 1047, including the specially concurring opinion of Mr. Justice Harvey at page 146.)

Turning now to the findings of fact and conclusions of law made in this case, it is in no carping sense that we are constrained to observe that the trial court's finding No. 2 is not in accord with the evidence. Even a casual glance at any state map will demonstrate its fallacy. Finding No. 3 is not of controlling importance. Finding No. 4 is primarily, if not exclusively, a nonjudicial question; it is a legislative and administrative one; and it cannot be denied that a substantial showing was made before the commission to warrant its finding of necessity and convenience. And the trial court's finding No. 4 was an unauthorized substitution of the court's judgment for the judgment of the tribunal authorized to determine the point. Finding No. 5 is not of controlling importance. Moreover, it invades the field of prophecy. Who can say that even two truck lines will be sufficient to serve the needs of that territory in the not distant future? Finding No. 6 is not sustained by the record. The fact that a certificate is granted to a competing truck line does not justify an assumption that the commission failed to give due consideration to the service furnished by the plaintiff. Touching the trial court's conclusions of law, the first is a mixed finding of law and fact, and in our opinion it is not a sound statement of the pertinent law nor a fair statement of the pertinent facts. The second conclusion has no bearing on this case. The order of the commission granting the certificate of convenience and necessity which was the subject of attack in this lawsuit was made on November 7, 1930, while the statute referred to in conclusion No. 2 was not enacted until March 16, 1931, and .did not take effect until July 1, 1931. (Laws 1931, p. 350.) Conclusion No. 3 is not fairly deducible from any findings of fact properly open to the court's determination. Conclusion No. 5 is an argumentative summary of all the findings and conclusions.

The painstaking and exhaustive brief of counsel for plaintiff seeking to uphold the trial court's judgment has been studied with care. Counsel seek to stress the bearing of R. S. 1931 Supp. 66-199 and 66-1103 upon the questions with which we are presently concerned. These paragraphs were fully considered in *Pickwick Greyhound Lines v. Public Service Commission,* 132 Kan. 464, 295 Pac. 647, where certain bus lines already giving cross-state service sought to have the court set aside a certificate of convenience and necessity issued to a proposing competitor. It was there held that these statutory provisions were not inconsistent, that there was a field of operation for both; that the finding of the commission that the granting of a certificate would promote the public convenience was a judicial question; and that "the district court, under the law, was compelled to uphold that finding." (p. 467.) Still more obvious should be that conclusion in view of the enactment of the more recent statute with which we have to deal (R. S. 1931 Supp. 66-118a *et seq.*), which was enacted in 1929, and which would thereby modify and supersede the provisions of R. S. 1931 Supp. 66-199 and 66-1103 enacted in 1926 if there was any insurmountable difficulty in finding a practical field for the operation of them all. (*Arkansas City v. Turner, State Auditor,* 116 Kan. 407, 226 Pac. 1009; *Great Western Portland Cement Co. v. Public Service Comm.,* 121 Kan. 531, 247 Pac. 881; *City of Wichita v. Wichita Gas Co.,* 126 Kan. 764, 271 Pac. 270.)

Plaintiff is quite right in stressing the mandate of the statute (R. S. 1931 Supp. 66-199) that "the commission should give reasonable consideration to the transportation service being furnished by any . . . motor carrier and shall give due consideration to . . . the effect which such proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected by such proposed transportation service or likely to be affected thereby . . ." Of course the commission should give these matters consideration. A conscientious commission would do so if there was no such mandate in the statute. The granting or withholding of certificates is not a prerogative to be capriciously exercised. (*Jackman v. Public Service Commission,* supra.) It is to be exercised with sound discretion to promote the public convenience. But it is the sound discretion of the commission, not that of the courts, which is to be exercised in the issuance or refusal of certificates of convenience and necessity.

In *Atchison, T. & S. F. Rly. Co. v. Public Service Comm.*, 130 Kan. 777, 288 Pac. 755, where the action was to set aside a certificate of convenience and necessity to operate a bus line between Wichita and Kansas City and intermediate points (with other transportation services galore already occupying the territory) the order of the commission was upheld. The court said:

"The word 'necessity' as used in chapter 206 of the Laws of 1925 does not mean something indispensable or something that is absolutely essential, but rather a public need, without which the public—the people generally of the community—would be inconvenienced or handicapped to their detriment in the pursuit of business or wholesome pleasure as compared with that enjoyed by others generally, similarly situated." (Syl. ¶ 3.)

Instructive cases cited and quoted in the briefs of plaintiff and defendants have been carefully perused, but the questions we have to decide are so completely covered by Kansas law and our own decisions that we would not be justified in protracting this already too lengthy opinion by discussing them.

The court holds that the record does not sustain the finding that the commission failed to give due consideration to the transportation service being furnished by the plaintiff so far as it occupied the field which the grantee of the certificate proposed to serve, nor does it show that the commission ignored the effect the partially competing service of the later certificate holder may have upon plaintiff's business and revenues.

Until the legislature shall change the rule announced in *Kansas Gas & Electric Co. v. Public Service Com.*, 122 Kan. 462, 251 Pac. 1097, it furnishes as precise a guide for the granting or withholding of certificates as we can suggest:

"In determining whether such certificate of convenience should be granted, the public convenience ought to be the commission's primary concern, the interest of public utility companies already serving the territory secondary; and the desires and solicitations of the applicant a relatively minor consideration." (p. 466.)

The judgment of the district court is reversed and the cause remanded with instructions to set aside its injunction and to enter judgment for defendant.

HARVEY, SMITH and SLOAN, JJ., dissenting.